**KING TRAILER COMPANY, Inc., a California corporation, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 63–937 WB.**

United States District Court
S. D. California,
Central Division.

April 29, 1964.

W. S. Rainbolt, Long Beach, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Herbert D.

Sturman, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

This is an action for refund of excise taxes assessed and paid pursuant to 26 U.S.C. § 4061.[1]

King Trailer Company, Inc., plaintiff, is a manufacturer of units denominated as "pickup coaches", which are primarily designed to be transported in the bed of a pickup truck. The pickup coach is similar in design to a house trailer, but for the sake of safety and convenience it is so shaped that it fits in the bed of the truck, and does not have a chassis of its own, or wheels. Each coach is a self-contained unit, having insulated walls, a roof, and a floor of its own, together with a door and window. The coaches are equipped with temporary living and sleeping quarters and have, or may have, furnishings and appliances similar to those commonly found in house trailers. The coaches have the plumbing features which are found in the typical house trailer, and they are subjected to the house trailer inspection standards. In addition, each is equipped with six volt wiring, 110 volt house wiring, and butane equipment. While the units are not spacious it is possible to take up a permanent residence in them, although this is seldom done. However, it is not uncommon for people to live in them for two or three months at a time. The units are merely set in the bed of a pickup truck and are held therein by two turnbuckles, which can be attached to the post-holes in the body. No special drilling or other modification of the truck bed is required for the purpose of carrying a coach. The units are easily removed. They can be removed in from 10 to 15 minutes by simply jacking them up and driving the truck out from under them. Functioning of the units is not dependent upon the truck itself; they can as easily be used on a trailer, on the ground, and, indeed, on anything that will bear their weight. Of course, they are normally transported on pickup trucks, for their design is aimed at making such a method of conveyance ideal.

On May 25, 1955, R. J. Bopp, Chief of the United States Treasury Department's Excise Tax Branch, advised the plaintiff by letter that:

"The pickup coach and the sport top bodies are exceptionally like house trailer bodies with the exception that they are mounted on tax paid pickup

---

1. 26 U.S.C. § 4061 reads: "Imposition of tax

"(a) Automobiles.—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

"(1) Articles taxable at 10 percent, except that on and after October 1, 1972, the rate shall be 5 percent—

"Automobile truck chassis.
"Automobile truck bodies.
"Automobile bus chassis.
"Automobile bus bodies.
"Truck and bus trailer and semitrailer chassis.
"Truck and bus trailer and semitrailer bodies.
"Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.

A sale of an automobile truck, bus, truck or bus trailer or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of the chassis and of the body.

"(2) Articles taxable at 10 percent except that on and after July 1, 1964, the rate shall be 7 percent—

"Automobile chassis and bodies other than those taxable under paragraph (1).
"Chassis and bodies for trailers and semitrailers (other than house trailers) suitable for use in connection with passenger automobiles.

A sale of an automobile, trailer, or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of the chassis and of the body.

"(b) Parts and accessories.—There is hereby imposed upon parts or accessories (other than tires and inner tubes and other than automobile radio and television receiving sets) for any of the articles enumerated in subsection (a) sold by the manufacturer, producer, or importer a tax equivalent to 8 percent of the price for which so sold, except that on and after July 1, 1964, the rate shall be 5 percent."

trucks. In view thereof, we are of the opinion that the bodies in question are not automobile truck bodies within the purview of Section 4061 (a) (1) and (2) of the Code. Sales of these bodies are, therefore, not taxable under that section of the law."

However, on April 1, 1960, the Internal Revenue Service issued Rev.Rul. 60-39, C.B. 1960-1, p. 406, which states, in pertinent part:

"Advice has been requested whether the manufacturers excise tax on (1) motor vehicle articles * * * applies to the sales of the articles described below * * * 'Situation (2). A company manufacturers and sells a so-called "slide in cabin" which is designed to be placed in the body of a pickup automobile truck. The cabin has a floor, a door, and windows. It is described as being waterproof and dustproof. It is used for temporary living and sleeping quarters and, generally, is sold equipped with an ice box, stove, light, cabinet, shelf, and two mattresses. When it is not in use on the truck, it may be placed on the ground, for use as a guest cottage or as a playhouse for children.' * * *

"With respect to the articles described in situations (1) and (2) above [situation (1) described a unit like the one described in situation (2) but it was secured to the truck '"frame" by four bolts.], the Internal Revenue Service considers such articles to be bodies for automobile trucks within the meaning of section 4061(a) (1) of the Code. The fact that the articles are designed to be sold with eating and sleeping facilities does not bring them within the scope of the exemption provided by section 4063(a) of the Code. To be considered a house trailer body for purposes of that exemption, a body must be primarily designed to be mounted on a trailer or semitrailer chassis. Furthermore, it generally

must also be designed to accomodate sufficient equipment to render it suitable for use as a residence, with facilities for essential living purposes such as sleeping, eating, and the storage and preparation of food. * * *

"Accordingly, sales of the above-described bodies and slide-in cabins by the manufacturer, producer, or importer thereof are subject to the manufacturer's excise tax imposed by section 4061(a) (1) of the Code."

Pursuant to this ruling plaintiff's coaches were considered "truck bodies", and it was required to pay an excise tax upon them for the period from May, 1960, through September, 1962.

After performing all the conditions precedent, plaintiff brought this action against the United States of America, defendant, to collect the taxes so paid. Two major issues are now before the Court: (1) Are plaintiff's coaches "automobile truck bodies" within the meaning of 28 U.S.C. § 4061(a) (1); and (2)? If not, are they automobile "accessories" within the meaning of 26 U.S.C. § 4061 (b)?

This Court has jurisdiction of this action by reason of 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a) (1). Venue is also proper. 28 U.S.C. § 1402(a) (2).

At the outset the defendant points out the fact that where a regulation construing an ambiguous statute has been acted upon by the officials charged with its administration it should not be disturbed except for cogent reasons. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930), and Logan v. Davis, 233 U.S. 613, 34 S.Ct. 685, 58 L. Ed. 1121 (1914). On the other hand it has also been held that where the construction is "neither uniform, general, nor of long standing" and serves no particular purpose other than compliance with the supposed command of the statutes, it is not entitled to any great weight. 1 Mertens, Law of Federal Income Taxation § 3.20. See Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84

L.Ed. 340 (1940), and United States v. Pleasants, 305 U.S. 357, 59 S.Ct. 281, 83 L.Ed. 217 (1939). Moreover, the deference normally given to regulations does not necessarily extend to informal rulings of the Internal Revenue Service in answer to taxpayer's questions. See, Biddle v. Commissioner, 302 U.S. 573, 58 S. Ct. 379, 82 L.Ed. 431 (1938). Similarly, rulings may not be arbitrary or unreasonable, or extend the scope or terms of a tax statute, and are entitled to no more weight than the reasons sustaining them. And, it has also been said that tax statutes should be construed strictly, though reasonably, and should not be unduly expanded. Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924), and United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240 (1923).

Thus, the fact that the Internal Revenue Service has issued a Revenue Ruling provides no talisman which will answer the questions presented here. The reasonableness of the defendant's position cannot be decided in a vacuum, and this court must look to the legislative history; the particular facts involved here; and the Service's own interpretations in similar cases.

The germinal statute, upon which 26 U.S.C. § 4061 is based, was passed in 1932, 47 Stat. 261, c. 209 § 606, June 6, 1932. That statute provided for a tax on, in general, automobile truck bodies and chassis, parts, accessories, and tires; as well as other automobile chassis and bodies, etc. It did not specifically levy a tax on trailers. There were many statements made on the floor of Congress concerning this statute, and many letters were read into the record. Although no member of Congress, or letter writer, made any specific statement regarding the definition of a truck or automobile chassis or body, what was said is informative. One thing which stands out in the Congressional Record is the fact that although many Congressmen referred to all of the other items in this statute in detail, they referred to chassis and bodies simply as automobiles or trucks. This is to be expected. To the

legislators, and to most people, an automobile or a truck is a unit made for carrying people or things. If one is required to state what remains when the body is removed he will probably say "the chassis". Thus, what was truly intended to be taxed was the truck or automobile itself. Of course, the tax cannot be evaded by selling the chassis and body separately, each is subject to the tax. Supporting this view is the fact that accessories were specifically mentioned. An accessory is distinguished from a body or chassis. The body and chassis together comprise the truck or automobile. If accessories are removed you still have the truck or automobile unit; not so if you take away the whole body. A further fact which can be distilled from the legislative history of 47 Stat. 261 is that the legislature considered it was taxing the "automobile industry". And, more importantly, it intended to tax things that were primarily designed for transportation purposes. Many of the objections to this statute centered around the complaint that only one means of transportation—trucks and passenger automobiles —was being taxed. Since trains, ships and airplanes were also used for transporting people and things it was said to be unduly discriminatory to tax this single mode of transportation. Despite the objections, the statute was passed. [For the debates and letters bearing on this legislative history see, Congressional Record, vol. 75, 72d Cong., 1st Sess., pages: 1137–39; 1648; 2210; 5798; 7038; 7040–41; 7329; 9878; 10086; 10382; 10610; 11136–37; 12021; and 12024.]

The later legislative history has not shown a different intent. In 1941 the statute was amended. 55 Stat. 711, c. 412, § 544, Sept. 20, 1941. Once again objections were made to placing taxes on objects primarily used for the transportation of people and goods. But the tax on automobile truck bodies and chassis was not removed. [See, Congressional Record, vol. 87, 77th Cong., 1st Sess., pages A2361–62]. This statute made one innovation, for the first time all trail-

ers were included within the objects subject to taxation. The House and Senate Reports merely stated that trailers were now taxed; no explanation was given. [See, House of Representatives Report No. 1040, House Ways and Means Committee § 544; and Senate Office Report No. 673, Senate Committee on Finance; both 77th Cong., 1st Sess.]

But in 1951, during a revision of the statute, an exemption for house trailers was written in. 65 Stat. 532, c. 521, § 481(b), October 20, 1951. The reason assigned for this exemption is rather instructive. Senate Report No. 781, 1951 U.S.Code Congressional and Administrative Service pp. 1969, 2073 states:

"Your committee's bill removes the tax on house trailers because it recognizes that, during periods of emergency such as the present, the bulk of these house trailers are used for housing * * * rather than as a means of transportation."

See also, House Report No. 586, 1951 U.S.Code Congressional and Administrative Service pp. 1781, 1826. The exception continues to this day. Clearly, Congress only intends to tax things constructed to move on the highway, which are primarily used as a means of transportation.

Thus, although Congress could not have had a specific intent regarding pickup coaches, it did have the general intent outlined above, and if that fairly encompasses such coaches they are properly subject to the tax. But, that does not appear to be the case. The coach does not really become a part of the truck carrying it. With or without the coach a pickup truck remains an integrated whole, consisting of a body and chassis. Few people seeing a pickup truck driving about without such a coach upon it would think something was missing. One would not see a mere chassis going down the street; and, since no modification of the truck bed is necessary, one would simply see what appeared to be an ordinary pickup truck. If the coach is on the truck one sees a pickup carrying a coach. If it is not, one merely sees a pickup truck. A person who owns a truck can easily take the coach off or put it on. In fact, one good thing about the coach is that the truck can still be used for carrying any other items; the coach has not turned the pickup into something else. Furthermore, when the truck is sold the coach can be and often is retained. Thus, on this basis alone, it is doubtful that Congress would have considered the coach a truck body. Nor would the average reasonable layman.

Moreover, it cannot be said that the primary use of the pickup coach is the transportation of people and/or things, which is the primary use of trucks and passenger automobiles. If one merely wanted a vehicle for transporting people plus a few typical household conveniences he could obtain it at a more reasonable price than the cost of a pickup truck plus the $1000 or so that plaintiff's coach costs. It seems clear that the real primary value of the plaintiff's unit is the fact that it provides at least a temporary shelter and residence for people when they are away from home. It is an abode away from home. It can be set down at a camp site or elsewhere, and it will function just as well as it will on the truck. In fact, it can even be used as a guest cottage at home. And in case of another national emergency people could reside in coaches, just as they have resided in small trailers in the past. Whether the coach remains on the truck or not is a matter of indifference. It is as good off as on. True, it is primarily designed to be transported in the bed of a pickup truck; but the fact that it is designed to be so transported from place to place does not make it a part of the body of the truck itself. It *does* carry certain things; clothes can be placed in its closet, and food in the larder. It also has a sink, tables, and beds, as well as other household equipment, attached to it. But to say that it thus becomes a sometimes truck body for the purpose of carrying its own attachments and a few other items is stretching a point a bit too far.

Therefore, it does not appear to have been within the intent of Congress to tax a unit of this kind as a "truck body".

Nor do the words of the statute demand such a construction, and an extension of the statute to include these units would be unreasonable. It is interesting to note that for the most part the Internal Revenue Service's interpretations of 26 U.S.C. § 4061 agree with the views set out above. Thus, the Service has often stated that where the primary purpose of a unit is not the transportation of persons and things over the highways it is not a truck body for the purposes of the section, even if it is also used for that purpose. See e. g., Rev.Rul. 58–424, C.B. 1958–2, p. 762; and Rev.Rul. 57–440, C.B. 1957–2, p. 721. The Service rulings amply demonstrate that this determination was not a mere application of long-standing administrative policy.

In Rev.Rul. 60–185, C.B. 1960–1, p. 412 advice had been requested as to the taxability of so-called cargo containers as truck bodies. The containers were designed so that they could be loaded while not on any means of transportation—just as plaintiff's product can be. Then they could be carried on many different sorts of conveyances, including boats, trains and trucks. They were designed so that they could be attached to a truck bed and transported down the highway in that manner. The Service indicated that these containers resemble ordinary truck and semitrailer bodies and when transported by motor vehicles perform the same function as such bodies. But, said the Service:

> "the determining factor is that they are not primarily designed for highway use. They are articles designed or adapted by the manufacturer for purposes predominantly other than the transportation of property on the highway even though incidental highway use may occur."

If cargo containers are not truck bodies, when they are designed to serve the functions of such bodies, then the plaintiff's coaches should be less so. It cannot be said that the "predominant purpose" of plaintiff's product is the transportation of property on the highway. Its main purpose is to provide living quarters off the highway.

Also of interest is Rev.Rul. 56–479, C.B. 1956–2, p. 796. This involved ready-mixed-concrete trucks. A large tank is mounted on gears and placed on the truck chassis. The tank is rotated by a motor so that concrete can be mixed in transit. If a customer orders a load of concrete, the ingredients are placed in the tank and then the whole mixture is transported down the highway in the tank, being mixed as it goes. When asked if the tank constituted a truck body the Service said it did not. The reason was that the primary purpose of the mixer was mixing concrete, and not transportation of it, as a truck body. This was held even though it cannot be doubted that the whole purpose of the equipment is to transport concrete over the highways to construction sites. The mixer-truck would not be very useful if it could not do that. If a mixer, which has no value at all aside from transporting mixing concrete over the highways is not a truck body, it is difficult to see why plaintiff's unit which has a multitude of uses apart from the transportation of property, is a truck body.

And on the question of what sort of unit is primarily designed for transportation purposes, consider Rev.Rul. 60–27, C.B. 1960–1, pp. 405–06. There the manufacturer made a trailer with chassis and wheels, which was furnished as an office. It was used by contractors at job sites, and was designed to be towed behind a vehicle on the highway from site to site. It looked just like a house trailer from the outside. However, it was not considered a house trailer. The Service said:

> "These office trailers are primarily designed for use on job sites located off the highway, and their occasional use on the highway in moving from one job site to another is considered merely incidental to their prime function as portable field offices."

Much the same thing can be said about plaintiff's coaches. While the coaches

are primarily designed to be transported in the bed of a pickup truck when they are on the highway, the trailer offices were primarily designed to be towed behind a vehicle when on the highway. But, like the office trailer, the coach is only used on the highway for the purpose of moving it and its contents from place to place.

In addition, R. J. Bopp's letter to the plaintiff, *supra*, indicates that the Service then recognized the similarity between the function of house trailers and the pickup coaches—that is, neither has the transportation of goods for its primary purpose, and each will provide a suitable place to live.

For other rulings which throw some light on this matter see: Rev.Rul. 58–507, C.B.1958–2, p. 765 (all purpose street surfacing rollers); Rev.Rul. 60–269, C. B. 1960–2, p. 296 (airport rescue vehicles); and Rev.Rul. 60–270, C.B. 1960–2, p. 298 (airport service vehicle).

Far from being a reasonable and uniform ruling of long standing, the ruling that plaintiff's coaches are taxable truck bodies is a virtual aberration. Furthermore, it serves no particular administrative convenience, and is no more than compliance with a supposed statutory command.

The taxes involved here were exacted from plaintiff on the ground that its coaches were truck bodies. As a result plaintiff had to pay a ten percent tax. Now the defendant says that even if they were not truck bodies they are accessories, and an eight percent tax is due. While there might be some question of the defendant's right to raise this question at this late date, it has been held that the United States may put forward a different ground to sustain a tax levy than was put forward to assess it in the first place. See, Roybark v. United States, 104 F.Supp. 759 (S.D.Cal.1952), affirmed, 218 F.2d 164 (9th Cir. 1954); Canton Cotton Mills v. United States, 94 F.Supp. 561, 119 Ct.Cl. 24 (1951); and Saunders v. Higgens, 29 F.Supp. 326 (S. D.N.Y.1939). Thus the contention that the coaches are accessories will be treated as a theory put forward to sustain the tax in part.

The basic administrative regulation setting forth the rules for deciding whether or not an item is an accessory is of long standing. See, Treasury Regulation 48.4061(b) (2) as amended May 23, 1963. The United States Supreme Court put its imprimatur on the principle behind the regulation in Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930). In Universal Battery the Supreme Court said, at page 584 of 281 U.S., page 423 of 50 S.Ct., 74 L.Ed. 1051:

> "We think the view taken in the administrative regulations is reasonable and should be upheld. It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted."

But the question of whether an article is primarily adapted for use with a motor vehicle is one of fact. The Universal Battery case makes this perfectly clear, for, while the court upheld one case which found that the primary use of a "battery" was with an automobile, it did not say that was true as a matter of law. In fact, at the same time, the Court reversed another case because the lower court had not made a factual determination of that question. It sent the case back for a finding of fact, and did not simply state that the "battery" *was* an accessory.

The federal courts still follow this theory. Thus, in Smith v. McDonald, 214 F. 2d 920 (3d Cir. 1954) the court found that as a matter of fact a sign, meant to be placed atop a taxi cab to give the company's name, was not an automobile accessory, especially since taxi meters were not so considered. But in Benmatt Organization v. United States, 134 F. Supp. 511 (S.D.Cal.1955), affirmed, 236 F.2d 959 (9th Cir. 1956) the court found that the mere fact a license plate holder had a dealer's name on it and was used

for advertising did not make it non-taxable, where without such a name on it it was admitted to be an accessory. And in Aran v. United States, 259 F.2d 757 (9th Cir.) cert. denied, 358 U.S. 866, 79 S.Ct. 100, 3 L.Ed.2d 100 (1958) a baby-bottle warmer was involved. The warmer was designed to plug into an automobile cigarette lighter socket and could not be used in the home unless a special converter, which the manufacturer did not even sell, was purchased. Furthermore, the only use for which it was advertised was use in an automobile. The lower court found as a fact that the warmer was primarily used in connection with an automobile. It further found that the warmer was a part or accessory as a matter of fact. The Court of Appeals held that these factual determinations were not clearly erroneous, and affirmed. See also, Masterbilt Products Corp. v. United States, 42 F.Supp. 294, 95 Ct.Cl. 451 (1942).

Upon all of the facts of this case it does not appear that the plaintiff's coaches are primarily adapted for use on motor vehicles, within the meaning of the rules. Although each coach is designed to be carried on such motor vehicles it does not truly complement the vehicle's own function or ornament it. It is easily placed within the truck, but that alone does not make it an accessory thereof. Of even more import is the fact that it does not depend on the motor vehicle to perform its major function as a residence. It is not like the bottle warmer which cannot operate unless it is attached to a motor vehicle or unless a converter, which could cost more than the warmer itself, is purchased. Nor is it like the license plate frame, which could have little use away from such a vehicle. The coach's primary purpose is to provide a residence, which is at least temporary, for its owners. It performs this function equally well when it is off the pickup truck. It doesn't need the aid of any part of the vehicle to perform its function as a residence—not even the electrical system.

Although it is designed to be transported in the bed of the truck, it is not primarily adapted to use on the truck. It should also be noted that plaintiff's advertising brochure points out the fact that this "versatile and practical" coach can be removed from the truck and lived in when the owner is not actually traveling; and also emphasizes how easy it is to remove the coach from the truck. In short, the coach is not a mere accessory of the truck.

The regulations, as amended in May of 1963, do not disagree with this finding. Thus, revised Treasury Regulation 48.-4061(b) (2) states:

"An article shall not be deemed to be a taxable part or accessory even though it is designed to be attached to the vehicle or to be primarily used in connection therewith if the article is in effect the load being transported and the primary function of the article is to serve a purpose unrelated to the vehicle as such. For example, a construction derrick attached to a truck is not a taxable part or accessory inasmuch as the derrick is the load of the truck and its use is in connection with construction work at a construction site rather than in connection with the transportation or loading function of the truck."

To paraphrase the Department's example: a pickup coach is not a taxable part or accessory inasmuch as the coach is the load of the truck and its (primary) use is for living purposes at a campsite or other location rather than in connection with the transportation function of the truck.

■ Plaintiff's pickup coaches are neither truck bodies nor truck parts and accessories. Therefore they were not properly subjected to the taxes imposed by 26 U.S.C. § 4061.

Counsel for plaintiff is directed to prepare, serve and lodge findings and judgment pursuant to local Rule 7.