Henry J. HERREN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 68–G–82.

United States District Court, S. D. Texas, Galveston Division.

Aug. 18, 1970.

customarily present in a residence. At the other extreme is an article consisting of one piece which simply fits on top of and encloses the bed of a pickup truck. Such an article is not customarily called a "camper" at all, but rather a truck top cover or simply a top or cover. Articles of this last kind do not contain or constitute a cabin, nor are they ordinarily equipped with the above mentioned facilities customarily present in a residence.

Robert I. White, of Chamberlain & Hrdlicka, Houston, Tex., for plaintiff.

Daniel Penner, Atty., Tax Division, U. S. Dept. of Justice, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

NOEL, District Judge.

Plaintiff brought this action for refund of manufacturers excise tax assessed and paid with respect to certain articles he produced from October 1, 1965, to June 30, 1967. The Government contends that the articles are subject to the tax imposed on automobile parts and accessories by § 4061(b) (1) of the Internal Revenue Code of 1954 (hereinafter cited as "the Code" or by section number only). Plaintiff contends that the articles are not subject to such tax, or alternatively that they fall within the exemption prescribed in § 4063(a) (1).

In the nomenclature of the industry and applicable tax law the word "camper" is a generic term referring to any of several types of articles designed to be bolted to a pickup truck and used for living and sleeping accommodations in a recreational setting, as on fishing, hunting, or vacation trips. Such articles vary in size and amenity. The more elaborate contain cabins having ceilings, insulated walls and floors, and are equipped with sitting, sleeping, cooking, refrigeration, dining, toilet, and similar facilities

From 1964 to date, plaintiff Henry J. Herren has been engaged in the manufacture and sale of campers under the trade name "Heron." During the period involved here, he manufactured, advertised, and sold three basic items, a slide-in cab-over unit,[1] a slide-in sleeper unit,[2] and a truck top cover identified in his advertising as a "Jr. Camper."[3] All three items are designed to be attached to a pickup truck by four bolts and have a roof, four sides, side crank-out windows with screens, and a fixed front window. The slide-in cab-over and slide-in sleeper units have a floor, 32 square feet of floor space, a vertical door, a screened crank-out roof vent, insulation, and wood paneling. With a height of 74 inches, the slide-in cab-over unit provides 375 cubic feet of space inside and is equipped with beds and mattresses for four, 12-volt electrical connections and lighting, a stove, a refrigerator or icebox, a sink, dinette seats, a table, a cupboard, and a sideboard. The slide-in sleeper is 60 inches high and has 290 cubic feet of space, two mattresses, 12-volt interior lighting, a cabinet, and a shelf.

By contrast, plaintiff's pickup cover, which he now advertises as his Jr. Camper, has no floor except that provided by the pickup truck to which it is attached. After installation and in conjunction with the truck body sides and the truck floor, the unit provides a waterproof area of 48 square feet con-

---

1. Plaintiff's Buddy 10, Heron 800, Heron 1000, and Heron 1060.

2. Plaintiff's Heron 800 Sleeper.

3. Plaintiff's Heron Jr. Camper. Within the industry, this type unit is also known as a fitted truck top cover, a one-piece top, or a sport top body. Prior to April 1966, the unit which plaintiff now calls his Jr. Camper, was called his "pickup cover."

taining 220 cubic feet of space inside and a height from truck floor to camper ceiling of 54 inches if equipped with a vertical door, but only 200 cubic feet and a height of 48 inches if equipped with a horizontal door. During the period in suit plaintiff would build a pickup cover to a greater height for a charge of from $20 to $30 for each six inches of height.

Available to purchasers of plaintiff's pickup covers as options at extra cost are insulation, paneling, a crank-out roof vent, and 12-volt lighting. Overhead and floor cabinets, bunks, mattresses, tables, iceboxes, stoves, sinks, commodes and floors which are installed as standard equipment in the slide-in cab-over and slide-in sleeper units, may be purchased separately from plaintiff's stock and used in or with the pickup covers.

During the period October 1, 1965, to June 30, 1967, the slide-in cab-over units ranged in price from $1,095 to $2,495, the slide-in sleeper units, from $535 to $565, and the pickup covers, from $189.-50 to $349.50.

On October 5, 1968, the Government assessed taxes and accrued interest in the amount of $11,882.46 with respect to plaintiff's sales of pickup covers (Jr. Campers) during the period. Only such assessments are involved in this litigation. Plaintiff paid $56.54, representing the tax assessed on the sale of four articles, filed timely claims for refund of the amounts paid, and instituted this action. Defendant thereafter counterclaimed for the unpaid portion of the assessment. The case was tried to the Court without interposition of a jury on June 3, 1969, at Galveston, Texas. Jurisdiction is present. 28 U.S.C. § 1346 (a) (1), (c).

Section 4061(a) (1) imposes a tax on the bodies and chassis of certain motor vehicles including pickup trucks. Section 4061(b) (1), the provision upon which the Government relies here, imposes a tax "upon parts or accessories * * * for any of the articles enumerated in subsection (a) (1) sold by the manufacturer. * * *" Plaintiff's first contention is that his pickup covers (Jr. Campers) are not "parts or accessories" within the meaning of such provision.

■ The term "parts or accessories" is not defined in the tax statute, but is the subject of a regulation sustained 40 years ago as reasonable by the Supreme Court in Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930). In view of that decision and the regulation's long history, the definition it provides "ought not to be disturbed now unless it be plainly wrong." Id. at 583, 50 S.Ct. at 423. See also, United States v. Correll, 389 U.S. 299, 305–306, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). As phrased presently it provides in pertinent part:

> Treas.Reg. § 48.4061(b)–2 Definition of parts or accessories.
>
> (a) In general. The term "parts or accessories" includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of an [article taxable under § 4061(a) (1)], (2) any article designed to be attached to or used in connection with such [taxable article] to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such [taxable article], whether or not essential to its operation or use. * * * An article shall not be deemed to be a taxable part or accessory even though it is designed to be attached to the vehicle or to be primarily used in connection therewith if the article is in effect the load being transported and the primary function of the article is to serve a purpose unrelated to the vehicle as such. * * *
>
> *      *      *      *      *      *
>
> (d) Examples of articles taxable as parts or accessories. Examples of articles which are taxable as parts or accessories are: * * * *fitted truck top covers;* * * * (Emphasis supplied.)

The regulation was construed in King Trailer Co. v. United States, 228 F.Supp. 1013 (S.D.Cal.1964), aff'd 350 F.2d 947

(9th Cir. 1965),[4] and held not to encompass a camper coach similar to plaintiff's slide-in sleepers:

> Although each coach is designed to be carried on such motor vehicles it does not truly complement the vehicle's own function or ornament it. It is easily placed within the truck, but that alone does not make it an accessory thereof. Of even more import is the fact that it does not depend on the motor vehicle to perform its major function as a residence. * * * The coach's primary purpose is to provide a residence, which is at least temporary, for its owners. It performs this function equally well when it is off the pickup truck. It doesn't need the aid of any part of the vehicle to perform its function as a residence—not even the electrical system. Although it is designed to be transported in the bed of the truck, it is not primarily adapted to use on the truck. * * * In short, the coach is not a mere accessory of the truck. 228 F.Supp. at 1020.

Applying reasoning like that just quoted, plaintiff argues that his pickup covers (Jr. Campers) are not "parts or accessories" because they do not enhance the truck's cargo hauling function, but instead are the truck's cargo itself, or load. His contention is that the function of his pickup cover (Jr. Camper), like the function of the camper coach at issue in King, is to serve as a residence and thus has nothing to do with the transportation or loading function of the truck.

Plaintiff's reliance on King is misplaced. The reasoning there which led to a conclusion that the camper coaches were not "parts or accessories" points to the opposite result here. Plaintiff's pickup covers (Jr. Campers) do complement the function of the truck by providing a weatherproof, theftproof, removable cover for the truck bed and its contents. Of even more importance in King was the fact that the utility of the camper coach as a residence was not affected by its removal from the bed of the pickup truck. By contrast, the pickup cover (Jr. Camper), like the license plate frame in Benmatt Org. v. United States, 134 F.Supp. 511 (S.D.Cal. 1955), aff'd per curiam on the opinion below, 236 F.2d 959 (9th Cir. 1956), has no utility apart from the truck, whether or not the owner should elect to equip it with the optional electrical system and other accessories available from plaintiff. The pickup cover (Jr. Camper) will not function as a residence or living quarters except in conjunction with the truck.

Returning to the tests set out by the applicable regulation, it is apparent that the pickup cover (Jr. Camper) meets all of them. (1) After installation, the pickup cover (Jr. Camper) serves as a component part of the pickup truck to which it is fitted and physically attached. This is its primary use, indeed its only major use. (2) It is designed to be attached to and used in connection with a pickup truck. As indicated heretofore, the pickup cover (Jr. Camper), unlike the cab-over and slide-in sleeper units, has only partial walls and no floor at all, and has no utility apart from the truck to which it is attached. It adds to the utility of the truck by enclosing the truck bed to render it weatherproof and theftproof. (3) The pickup cover (Jr. Camper) has no use apart from the truck. Thus its primary use is "in connection with" such truck.

Finally, the pickup cover (Jr. Camper) does not fit the "load" exception recognized in the regulation. As illustrating the meaning of that exception the regulation mentions "a construction derrick attached to a truck." Other articles designed to be mounted on a truck which have been held within the

4. The Government's first contention in King was that the camper coaches were taxable under § 4061(a) (1) as bodies of pickup trucks. As an alternative contention, the Government asserted at trial that the coaches were "parts or accessories" and thus taxable under § 4061 (b) (1). Only the latter aspect of the case is relevant here.

exception include equipment used to dig up and replant trees, Rev.Rul. 68–570, 1968–2 Cum.Bull. 492, equipment converting the truck into a "streetlight tower truck," Rev.Rul. 58–569, 1958–2 Cum.Bull. 767, and a hydraulic crane built to handle heavy equipment, Rev. Rul. 56–317, 1956–2 Cum.Bull. 793. In each instance the article considered not to be a "part or accessory" had no major use related to "the transportation or loading or unloading function of the truck." "On the other hand," the regulation continues,

> an article such as a towing cradle or loading or unloading equipment designed to be attached to or to be primarily used in connection with a truck is a taxable part or accessory inasmuch as the article contributes to the load-carrying function of the truck.

By contrast with the articles found to be within the "load" exception, plaintiff's pickup cover (Jr. Camper) enhances the load-carrying function of the truck to which it is mounted by rendering the bed of the truck weatherproof and theftproof. Of significance in this regard is the fact that it was not until the middle of April 1966, that plaintiff determined to advertise his pickup cover as a Jr. Camper. Similarly, early in 1966, after plaintiff began calling his pickup cover a Jr. Camper but long before the issues in this case were drawn, plaintiff caused an advertising brochure to be prepared describing the Jr. Camper as having "1001 uses." [5] "It has been said that a [taxpayer] plaintiff 'can hardly be allowed to tell one story to prospective customers and a different story to the tax collector.' " International Mfg. Co. v. United States, 382 F.2d 307, 310 n. 2, 180 Ct.Cl. 1196 (1967). The Heron Jr. Camper is not the load of the truck to which it is attached.

Because plaintiff's Jr. Campers fit each of the criteria of the applicable regulation, they are "parts or accessories" within the meaning of § 4061(b)(1). Therefore, they are subject to the manufacturers excise tax unless exempted by § 4063(a)(1), which provides as follows:

§ 4063. Exemptions

(a) Specified articles.—

(1) Camper coaches; bodies for self-propelled mobile homes.—The tax imposed under section 4061 shall not apply in the case of articles designed (A) to be mounted or placed on automobile trucks, automobile truck chassis, or automobile chassis, and (B) to be used primarily as living quarters.

The applicability of § 4063 to Heron pickup covers (Jr. Campers) is a

---

5. The full description of the Jr. Camper was as follows:

The Heron Jr. Camper is uniquely and smartly designed for either long or short wheel base, fleet side or step side pickup trucks. It is designed for the very least amount of wind resistance. It is equipped with large crank out jalousie windows on either side and a large window in the front. The lift-up type door has a large crank out window to let you "look through." All windows are fully screened. Constructed of finest quality pine and metaled with heavy duty .024 aluminum finished with epoxy type baked enamel, this unit truly has 1001 uses. Standard height is 31″ but can be built higher. Also available are fully insulated and paneled units with inside 12-v. lighting, roof vent and clearance lights. Hunters, weekenders and beachcombers may choose the upright door style or one of our other model Jr. Campers.

The general terminology of this description, when contrasted with the word descriptions, pictures and design layouts of the other five campers (all cab-overs or slide-in sleepers) in plaintiff's product line, emphasizes the versatility of the Jr. Camper. Nowhere does the brochure mention that the Jr. Camper was designed or suitable for living quarters. On the other hand, the material concerning the other campers emphasized the sleeping capacity, arrangement, fittings, and dimensions which made each useful and desirable as living quarters. The "high quality deluxe features" advertised as "standard equipment" enhancing the livability of the larger models were not shown to be available for installation on the Jr. Camper.

question of statutory construction, for this Court must give effect to the intention or purpose of the Congress as expressed in the statute. As a general proposition, tax statutes are construed in favor of the taxpayer. Tandy Leather Co. v. United States, 347 F.2d 693 (5th Cir. 1965). However, since exemptive provisions are matters of exception and legislative grace, they are always given a strict construction, one which refuses to extend the exception by implication or inference, and confines its operation to cases clearly within the letter of the statute. Commissioner of Internal Revenue v. Anderson, 371 F.2d 59 (6th Cir. 1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1687, 18 L.Ed.2d 623 (1967); Title & Trust Co. v. United States, 243 F. Supp. 42 (M.D.Fla.1965), aff'd per curiam on opinion below, 360 F.2d 285 (5th Cir. 1966); James v. United States, 176 F.Supp. 270 (D.Nev.1959), aff'd 308 F.2d 204 (9th Cir. 1962). A person claiming to fall within an exception to a statute has the burden of clearly bringing himself within it and must prove every fact essential to the invocation of the exemption. Rheem Mfg. Co. v. Rheem, 295 F.2d 473 (9th Cir. 1961).

■ Whether or not the language of a tax statute appears unambiguous on "superficial examination," Harrison v. Northern Trust Co., 317 U.S. 476, 479, 63 S.Ct. 361, 87 L.Ed. 407 (1943), a court "must look to the legislative history surrounding it," Commissioner of Internal Revenue v. Bosch's Estate, 387 U.S. 456, 463, 87 S.Ct. 1776, 1781, 18 L.Ed.2d 886 (1967). Such legislative history includes not only the committee reports and debates, but also the title or heading of an act or provision, Maguire v. Commissioner of Internal Revenue, 313 U.S. 1, 9, 61 S.Ct. 789, 85 L.Ed. 1149 (1941), and in the case of an amendment, the mischief it was intended to eliminate, In re Letters Rogatory Issued by Dir. of Insp. Gen. of Govt. of India, 385 F.2d 1017, 1020 (2d Cir. 1967). In short, "Where the mind labours to discover the design of the legislature, it seizes every

thing from which aid can be derived; * * *." United States v. Fisher, 2 Cranch (U.S.) 358, 386, 2 L.Ed. 304 (1805), quoted in United States v. Dickerson, 310 U.S. 554, 562 n. 6, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940).

Specifically, the issue here is twofold. First it must be determined what the Congress meant to accomplish by enacting the exemption provision—what articles it intended to exclude from the manufacturers excise tax. The second question is one of fact: whether Heron Jr. Campers are among the articles exempted from the tax. Because the Government concedes that the Jr. Campers are designed to be mounted on pickup trucks, the fact question may be particularized to whether they are "designed * * * to be used primarily as living quarters." For the reasons which follow the Court concludes that the Congress did not intend to exempt articles like Heron Jr. Campers from the tax, and finds that Heron Jr. Campers are not "designed * * * to be used primarily as living quarters" as those terms are used in the statute.

The exemption codified as § 4063(a) (1) was enacted as part of the Excise Tax Reduction Act of 1965, Pub.L. No. 89–44, 79 Stat. 136. Other than in the caption or heading "Camper coaches; bodies for self-propelled mobile homes," the Act itself does not identify by name or description which specific articles the Congress intended to exempt from the tax. However, prior developments and the legislative history of the amendment supply the omission.

Some type of truck and/or automobile tax has been in effect since 1918. House trailers, which prior to 1951 had been subject to the tax, were exempted in the Revenue Act of 1951, ch. 521, 65 Stat. 452, 532. In explaining its amendment to the House bill, the Senate Finance Committee reported:

Your committee's bill removes the tax on house trailers because it recognizes that, during periods of emergency such

as the present [the Korean War], the bulk of these house trailers are used for housing by defense workers, military personnel and others rather than as a means of transportation. S.Rep. No. 781, 82d Cong., 1st Sess. (1951), printed at 1951–2 U.S.Code Cong. & Ad.Serv., pp. 1969, 2073.

The House accepted the amendment, see Conf.R. (Rev. Act of 1951), 82d Cong., 1st Sess. (1951), printed at 1951–2 U.S. Code Cong. & Ad.Serv., pp. 2121, 2149, and the bill passed.

Initially, the Internal Revenue Service construed the 1951 amendment as exempting all camp trailers and all campers, as well as house trailers. For example, in 1953 the Service promulgated Rev.Rul. 53–100, 1953–1 Cum.Bull. 461, which held one- and two-wheel "camp" trailers to be exempt. This ruling has not been superseded or modified. And, in a 1955 informal ruling directed to the King Trailer Company, the Chief of the Excise Tax Branch of the United States Treasury Department stated:

> The pickup coach and the sport top bodies are exceptionally like house trailer bodies with the exception that they are mounted on tax paid pickup trucks. * * * Sales of these bodies are, therefore, not taxable. * * * Quoted in King Trailer Co., *supra*, 228 F.Supp. at 1014–1015.

Similar rulings were issued to other manufacturers. However, in Rev.Rul. 60–39, 1960–1 Cum.Bull. 406, the Service reversed its earlier informal rulings and held several varieties of campers not to be within the house trailer exemption, then codified as § 4063(a). The articles which were the subject of the Ruling were described as "slide-in cabins" similar to plaintiff's cab-over and slide-in sleeper units (situations (1) and (2)) and "one-piece tops" such as the Heron Jr. Camper [6] (situation (3)). After stating the substance of § 4061 and the house trailer exemption (§ 4063(a)), the Service held:

> With respect to the articles described in situations (1) and (2) above, the Internal Revenue Service considers such articles to be bodies for automobile trucks within the meaning of section 4061(a) (1) of the Code. The fact that the articles are designed to be sold with eating and sleeping facilities does not bring them within the scope of the exemption provided by section 4063(a) of the Code. To be considered a house trailer body for purposes of that exemption, a body must be primarily designed to be mounted on a trailer or semitrailer chassis. Furthermore, it generally must also be designed to accommodate sufficient equipment to render it suitable for use as a residence, with facilities for essential living purposes such as sleeping, eating, and the storage and preparation of food.

> With respect to the article described in situation (3), the Service considers this article to be specifically designed and adapted for use on motor vehicle articles taxable under section 4061(a) (1) of the Code.

> Accordingly, sales of the above-described bodies and slide-in cabins by the manufacturer, producer, or importer thereof are subject to the manufacturers excise tax imposed by section 4061(a) (1) of the Code. On the other hand, sales by the manufacturer, producer, or importer of the tops described in situation (3) are subject to the manufacturers excise tax imposed by section 4061(b) of the Code.

Earlier, in Rev.Rul. 58–487, 1958–2 Cum.Bull. 763, the Service had held self-propelled mobile homes to be outside the house trailer exemption and thus subject to the manufacturers excise tax as a body or chassis of a truck or automobile. This ruling was challenged by a taxpayer in Frank Motor Homes, Inc. v. United

---

6. Plaintiff's theory throughout this lawsuit has been that the Heron Jr. Camper is an article of the kind described in situation (3) in Rev.Rul. 60–39, and the record reflects that it is such an article.

States, 230 F.Supp. 782 (E.D.Mich.1964), aff'd per curiam on the opinion below, 354 F.2d 660 (6th Cir. 1965). The holding with respect to situation (2) in Rev. Rul. 60–39 (a slide-in sleeper type camper) was challenged by a taxpayer in King Trailer Co. v. United States, *supra.* Each taxpayer won in the district court in 1964. Appeals in each case were pending in 1965, when the Congress was considering reductions in the manufacturers excise tax.

The exemption provision adopted by the Congress as a part of the Excise Tax Reduction Act of 1965, now codified as § 4063(a) (1) of the Code, has already been quoted. In 1966, in Rev.Rul. 66–163, 1966–1 Cum.Bull. 252, the Internal Revenue Service announced that it had "reconsidered" Revenue Ruling 60–39 "as it relates to certain articles variously referred to as 'slide-in cabins' or 'pickup coaches,' etc., designed to be mounted or placed upon pickup trucks and described in *situations* (1) and (2) of that ruling." The new ruling modified the older one by stating that the Service "recognizes" the *King* decision "as a precedent in the disposition of other cases involving such articles."

The taxable status of the "one-piece tops" described in situation (3) of the Revenue Ruling 60–39 was clarified in Rev.Rul. 67–232, 1967–2 Cum.Bull. 365, the ruling which plaintiff attacks here. Such articles were held not to be exempted by § 4063(a) (1). The Service reasoned that to come within the exemption, an article must

> have a practical, preponderant use as living quarters. Such an article must be complete in itself and cannot depend on the body of a pickup truck for that completeness. To come within the exemption for camper coaches the article must be able to function as living quarters as well off the truck as it does mounted on the truck.

> The top described in *Situation (3)* of Revenue Ruling 60–39, and similar tops are not complete in themselves and, therefore, they do not come within the exemption from tax provided by

section 4063(a) (1) of the Code. Accordingly, as held in Revenue Ruling 60–39, such articles are subject to the tax imposed by section 4061(b) (1) of the Code when sold by the manufacturer, producer, or importer. * * *

Taking issue with this ruling, plaintiff contends that by adopting the exemption provision the Congress intended to reverse Revenue Ruling 60–39 in its entirety. His argument is a complex one which requires tedious analysis.

Plaintiff first points out that the language used by the Congress in § 4063(a) (1) is, "The tax imposed under section 4061," not, "The tax imposed under section 4061(a)." Section 4061 imposes two taxes, one, in § 4061(a), on certain bodies and chassis, and another, in § 4061 (b) (1), on certain parts and accessories. Noting that the house trailer exemption, now codified as § 4063(a) (3), applies only to "The tax imposed under section 4061(a)," plaintiff reasons that the Congress must, by enacting the "camper coach" exemption (§ 4063(a) (1)), have intended to exempt at least some articles from the tax on parts and accessories. Finally, referring to the two pertinent revenue rulings, No. 58–487 (holding self-propelled mobile homes taxable as bodies or chassis) and No. 60–39 (holding the articles described in situations (1) and (2) taxable as bodies and the "one-piece tops" described in situation (3) taxable as parts or accessories), plaintiff argues that the Congress must have intended to exempt "one-piece tops" because these were the only articles the Service had attempted to tax under § 4061(b). Such argument is valid only if there is no other article intended by the Congress to be exempted from the tax on parts and accessories. As plaintiff recognizes, determining congressional intent requires an examination of the legislative history of the 1965 amendment.

In January 1965 Senator Carlson of Kansas had introduced a bill, S. 220, 89th Cong., 1st Sess., to exempt "camper coaches" from the manufacturers excise tax. However, before his bill was acted

on, the House passed H.R. 8371, 89th Cong., 1st Sess., the bill which became the Excise Tax Reduction Act of 1965. The House bill, upon arrival in the Senate, was referred to the Senate Finance Committee which on June 14, 1965, reported it with amendments. One such amendment added an exemption provision identical in language with present § 4063 (a) (1). The reason for the addition was explained in the Committee's report as follows:

1. *Camper coaches* (sec. 801 of the bill and sec. 4063 of the code)

Under existing law, house trailers are specifically exempt from the manufacturers' excise tax on motor vehicles. House trailers which have been held to be exempt from tax under present law are both those which are suitable for use in connection with passenger automobiles and with trucks.

Presently, the Internal Revenue Service holds this exemption for house trailers does not apply to *camper coaches,* which are units designed to be mounted on a truck for use as living quarters or to mobile homes, which typically are bus-type bodies equipped for family living and mounted on truck chassis.

Historically, the rationale for exempting house trailers centered on the fact that such trailers were thought of as more or less permanent living quarters which were seldom moved about on the highways. However, small camper-type trailers have also been held exempt as house trailers.

In reality, the mobile-type motor home much more closely follows the initial rationale for exempting house trailers than is true of many of the small trailers now exempt under this provision. *Camper coaches, also, although generally too small to serve as permanent living quarters, nevertheless are, in some cases, larger and provide more nearly permanent living quarters than many of the smaller trailers now exempt from tax.* As a result, the traditional distinction as

to these different types of *mobile living quarters* has become blurred and, in your committee's opinion, to continue tax on any such quarters while exempting others would result in unfair competitive problems for the manufacturers as well as treating unfairly those who may desire to purchase one particular type of mobile living quarters rather than another.

For the reasons given above, your committee's bill adds a provision to the House bill providing an exemption from the manufacturers' excise tax on trucks, buses, automobiles, parts, etc., for *camper coaches* and bodies for self-propelled mobile homes. This exemption applies in the case of articles designed to be mounted or placed on trucks, truck chassis, or automobile chassis and to be used primarily as living quarters. The exemption applies whether the articles are sold as original equipment or as separate parts to be placed in use. * * * S.Rep. No. 324, 89th Cong., 1st Sess. (1965), printed at 1965–1 U.S.Code Cong. & Ad.News, pp. 1690, 1734–35 (emphasis added).

On June 15, 1965, the amended bill was debated on the floor of the Senate. Senator Carlson, probably the author of the camper coach exemption, explained its purpose in a lengthy statement. After referring to the private rulings extending the house trailer exemption to "pickup coach bodies and campers" and their reversal in Revenue Ruling 60–39, the Senator turned to the *King* case, in which the district "court, in a carefully reasoned opinion, refuted the position taken by the Internal Revenue Service in Revenue Ruling 60–39 and held that *pickup coach bodies and campers* were not 'automobile truck bodies' within the meaning of section 4061(a) and in any event came within the 'house trailers' exemption provided by section 4063(a)." 111 Cong.Rec. 13,670 (emphasis added).

Nor, the Senator continued, had the Service's position in Revenue Ruling 58–487 been accepted by the district court in

the *Frank* case, *supra*. His address next contains the following statement:

> The purpose of the exemption of *pickup coach bodies, campers* and self-propelled mobile homes from manufacturers excise taxes provided in the Excise Tax Reduction Act of 1965 is to correct the positions taken by the Internal Revenue Service in Revenue Ruling 60–39 and Revenue Ruling 58–487, to clearly exempt these items from manufacturers excise tax. * * * *Id.* (Emphasis added.)

The Senate amendment was accepted by the House. Conf.Rep. No. 525, 89th Cong., 1st Sess. (1965), printed at 1965–1 U.S.Code Cong. & Ad.News, pp. 1752, 1755. In explaining the amendment to the House, Representative Mills, Chairman of the House Ways and Means Committee, stated:

> Your conferees also agreed to an amendment modifying the tax on trucks, truck bodies, and truck parts to a very limited extent. In this amendment, it agreed that so-called *camper coaches* and bodies of mobile homes should not be included in this tax base due to the fact they are comparable to house trailers which are not presently subject to tax. 111 Cong.Rec. 1346– (1965), printed at 1965–1 U.S.Code Cong. & Ad.News, pp. 1778, 1785 (emphasis added).

Of significance here, because of Senator Carlson's express reference to the *King* decision, is the terminology used by the court in its opinion in that case. Therein the articles in controversy were denominated "pickup coaches" by the court. See 228 F.Supp. at 1014. Therefore, it is apparent that when the Senator used the term "pickup coach bodies and campers" in his address in support of the amendment, he was referring only to articles of the type in litigation in *King*. His term, "pickup coach bodies and campers," was shortened in the bill, the committee report, and Representative Mills's statement to "camper coach." The term "camper coach" is narrower than the generic term "camper," which is sometimes applied to one-piece tops like the Heron Jr. Camper.

Plaintiff's suggestion that "one-piece tops" are the only articles the Internal Revenue Service has attempted to tax as "parts or accessories" also fails to take proper account of the *King* litigation. There, in addition to assessing a tax on the slide-in cabin camper under § 4061(a) as a body or chassis, the Government alternatively attempted to tax it under § 4061(b) as a part or accessory. The legislative history compels the conclusion that the broad language was included in the exemption to ensure that "camper coaches" would be free from both taxes, not to expand the exemption to include articles not in litigation in *King* or mentioned in the Congress.

For the foregoing reasons, I conclude that Revenue Ruling 67–232 is a fair and reasonable application of the exemption provision, § 4063(a) (1), to the Heron Jr. Camper. That article not being within the exemption, is subject to the manufacturers excise tax imposed by § 4061(b) (1).

Alternatively, the Heron Jr. Camper is subject to the manufacturers excise tax imposed by § 4061(b) because it was not "designed * * * to be used primarily as living quarters." In support of his contention to the contrary, plaintiff offered as witnesses his wife and a number of Jr. Camper owners and subpoenaed twenty campers from among those sold during the period in controversy. Mrs. Herren, the designer of the articles in question, testified unequivocally as to her subjective intent that the Jr. Camper was designed to be used primarily as living quarters. A majority of the owners offered by plaintiff testified that they used their units for short periods of time each year for sleeping accommodations and for the protection of cargo on weekend trips and vacations, and that during the remainder of the year they used their pickup trucks for transportation to and from work, most

with their gear locked up inside.[7] Because the testimony of Mrs. Herren and the camper owners was obviously not disinterested,[8] such testimony together with the contents of the units as observed by the Court at trial does not settle this facet of the exemption question.

In assessing the applicability of § 4063 (a) (1), two fact questions are before the Court: whether the Heron Jr. Camper is "designed * * * to be used *primarily* as living quarters," and whether it is "designed * * * to be used primarily as *living* quarters." It was mentioned earlier, in connection with the discussion of § 4061(b), that plaintiff's advertising emphasized the versatility of the Jr. Camper, previously called a pickup cover by plaintiff, ignoring its suitability as living quarters. Construing an income tax provision, the Supreme Court recently defined "primarily" as " 'of first importance' or 'principally.' " Malat v. Riddell, 383 U.S. 569, 572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966) (per curiam). The record here reflects that if anything was "primary" in this sense in the design of the Heron Jr. Camper, it was versatility. Certainly it was not suitability as living quarters. This factor alone is sufficient to place the Heron Jr.

Camper outside the § 4063(a) (1) exemption.

In this case, however, it is not necessary to rest a decision on the definition of "primarily" alone, for the articles at issue here also fall afoul of the second branch of the factual inquiry. Plaintiff concedes that the words "living quarters" in § 4063(a) (1) present difficulty, but asserts that "living quarters" is synonymous with "sleeping quarters" or "sleeping accommodations." Moreover, plaintiff testified at trial that the Heron Jr. Camper was designed so that accessories such as bunks, stoves, ice boxes or refrigerators could be added.[9] However, during cross-examination he admitted that 70–80% of the Jr. Campers sold were the simple, horizontal door model without such accessories. He stated that from the standpoint of utility, the units with horizontal doors had greater utility than the vertical door units. The advertising brochure stated that hunters, weekenders and beachcombers *might* choose the vertical door model. *See* note 5 *supra*.

Of the 20 Jr. Campers viewed by the Court at trial, 18 had horizontal doors and only 2 had vertical doors. Ten had been sold without insulation and panel-

7. While not necessary for my disposition of the issues in this case and I do not rely upon same, it would be appropriate for me to judicially notice the following facts: The article referred to in Rev. Rul. 60–39 as a one-piece top and by various similar names in the trade is extensively manufactured, sold, and used; it is a very common article which may be observed mounted on numerous pickup trucks traveling the highways of Texas and the streets of the towns and cities in Texas; pickup trucks so modified are so numerous as to be a very common phenomenon which any person of normal observation would notice and appreciate; and, while some of the pickup trucks so modified have also been modified by the addition of articles which would permit such trucks to be used for sleeping purposes, the overwhelming majority are not only not so equipped, but to the contrary are used for the conveyance and protection of articles in the bed of the truck, the tops mounted thereon serving

to protect such articles from weather and theft.

8. In the case of the owners, the Court was aware that their testimony evidenced a clear understanding of the issues in litigation and a cooperative attitude toward the plaintiff.

9. Close examination at trial of the 20 Heron Jr. Campers subpoenaed by plaintiff failed to disclose any brackets, wiring or other fixtures built in as a matter of course into all such articles to adapt them for the attachment of the accessories mentioned by plaintiff. It was obvious from the articles examined that nothing in their design would prevent the installation of such accessories. But it would be as misleading to say that the Heron Jr. Camper is designed for the installation of such accessories as it would be to say that a blank wall is designed for the hanging of paintings. There is more to "design" than this.

ing. Many of them included cots or beds of some type, but most of the accessories of this nature had obviously been built or put in by the owner after purchase. None had running water, washing or toilet facilities. If the presence of these accessories added after purchase proves anything, it proves only that the units sold by plaintiff are *adaptable* for use as living or sleeping quarters, not that they are *designed* for such use.[10]

More significant is plaintiff's failure to prove that the articles at issue here were designed for use as living as opposed to merely sleeping quarters. Whatever the meaning of these terms in common parlance, in construing the term "living quarters" in § 4063(a) (1) this Court must consider the mischief the exemption was enacted to allay. As developed heretofore, the Congress adopted § 4063(a) (1) to overrule the position of the Internal Revenue Service concerning the taxability of the units described in situations (1) and (2) of Rev.Rul. 60–39. On the other hand, by adopting § 4063(a) (1), the Congress did not intend to disturb the Service's position concerning the units described in situation (3) thereof. Reference to the Revenue Ruling discloses that the Service there described the situation (1) unit as "equipped with *living and sleeping* accommodations" and stated that the units described in situation (2) are "used for temporary *living and sleeping* quarters." On the other hand, in describing the situation (3) unit, whose taxability was not disturbed by the Congress in 1965, the Service stated that when installed, "the top, together with the truck body sides and the truck floor, provides a waterproof and theftproof area which can be used for *sleeping* quarters." Therefore, in exempting only units "designed * * * to be used primarily as *living* quarters," the Congress must have considered "living" as distinct from "sleeping."

Living constitutes more than simply sleeping within the confines of a pickup truck, with or without a fitted cover. Before any article accurately could be referred to as living quarters, it should be of such proportions and design as to accommodate sufficient equipment to render it suitable for use as a temporary residence. It should have a door permitting one to enter standing rather than crawling, and when not installed on a pickup truck, it should be amenable to the installation or use of facilities for all essential living purposes.

Plaintiff's Jr. Campers have no sleeping, heating, cooking or eating facilities as such, and no plumbing or toilet facilities. A man of ordinary height cannot stand upright under the Jr. Camper when it is attached to the pickup truck. Even if equipped with any or all of the accessories available for purchase and installation, the article when removed from the truck and placed on the ground would not constitute living quarters in any reasonable sense. It would not then be amenable to the installation or use therein of facilities for all essential living purposes. Therefore, although plaintiff's Jr. Camper is adaptable for use as temporary sleeping accommodations when mounted on a truck, I find and conclude that it is not designed to be used primarily as living quarters within the meaning of § 4063(a) (1).[11]

---

10. There is no evidence that the article manufactured by plaintiff and called a Jr. Camper was designed or built differently from the article manufactured by plaintiff and called a pickup cover before the advertising brochure of 1966 was printed and distributed. The record reflects that each was a versatile, multi-purpose article designed to be attached to enclose the bed of a pickup truck.

11. Since trial of this case, Judge Barrow of the Northern District of Oklahoma has rendered a decision that articles much like plaintiff's Jr. Campers are exempt from manufacturers excise tax because designed to be used primarily as living quarters. Woodward v. United States, No. 69–C–77, Feb. 9, 1970. The court's findings of fact and conclusions of law are brief, and contain no analysis

The foregoing constitutes the Court's findings of fact and conclusions of law.[12]

By a separate final judgment, plaintiff's complaint will be dismissed with prejudice and judgment will be entered in favor of the defendant on its counterclaim in the amount of $11,882.46, plus interest. Costs will be assessed against the plaintiff. Counsel for defendant will promptly prepare and submit a judgment to the Court, consistent with these findings of fact and conclusions of law.

The Clerk will file this Memorandum Opinion and send copies to counsel of record.

of the legislative history of the exemption provision or discussion of the meaning of the term "living" therein. I consider *Woodward* unpersuasive authority on the issues in the instant case.

12. Neither party has addressed itself to § 6416 of the Code, which prescribes a

condition precedent to recovery of manufacturers excise tax in a refund suit. However, because plaintiff is not entitled to refund in any event, such omission is immaterial here.