**BIG THREE INDUSTRIAL GAS AND EQUIPMENT COMPANY**

v.

**UNITED STATES of America.**

Civ. A. Nos. 67–H–716, 68–H–980.

United States District Court,
S. D. Texas,
Houston Division.

May 19, 1971.

Charles R. Vickery, Jr., Vickery, Mc-Connell & Rowland, Houston, Tex., for plaintiff.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., Daniel L. Penner, Dept. of Justice, Dallas, Tex., Ben A. Douglas, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

BUE, District Judge.

Plaintiff here sues for the recovery of a manufacturer's excise tax, penalties and interest paid. As of March 31, 1971, plaintiff claims an aggregate of $88,-502.16 plus interest from that date, which amount is the original claim for refund plus interest less the amount admittedly due the government for a sum erroneously refunded to the plaintiff on December 13, 1968. Tax was assessed and collected under § 4061(a) of the Internal Revenue Code of 1954,[1] which

---

1. Int.Rev.Code of 1954 § 4061 [as amended by Sec. 203, Highway Revenue Act of 1956, c. 462, 70 Stat. 384, 387; by Sec. 201, Excise Tax Reduction Act of 1965,

imposes a 10 percent excise tax on the manufacturer of truck bodies sold by the manufacturer, producer, or importer. In conjunction with this · provision, § 4218 of the Code provides that the manufacturer of a taxable automobile or truck body or part or accessory is liable for such tax if the article is used by the producer rather than sold.[2] These provisions are defined in the Regulations [3] and case law as applying only to vehicles designed for highway use.

This Court has jurisdiction over the parties and subject matter of this suit. The ultimate issues before the Court are (1) whether the nitrogen conversion unit in question is a truck body; if the unit is a truck body, (2) whether it was manufactured by the plaintiff which is not seriously disputed, and (3) whether it was designed for highway use.

Plaintiff's Ransome Division, during the years in question, constructed certain nitrogen conversion units for use by another Division of plaintiff Big Three —Nitrogen Oil Well Service Co. [hereinafter referred to as NOWSCO]. These units are manufactured by plaintiff from component parts purchased from other manufacturers. NOWSCO's primary business is furnishing gaseous nitrogen, under high pressure, to the oil and gas industries for use in the servicing and completion of oil wells. For this purpose, each of NOWSCO's liquid to gas converters with accompanying high pressure pumps is permanently mounted on a truck chassis which transports it to various oil well, pipeline and industrial job sites. The operation of such a conversion and pumping unit always takes place at the job site off the public high-

P.L. 89–44, 79 Stat. 136; and by Sec. 201, Tax Adjustment Act of 1966, P.L. 89–368, 80 Stat. 38]:

(a) *Automobiles.*—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

(1) Articles taxable at 10 percent, except on and after * * *, the rate shall be 5 percent—
Automobile truck chassis.
Automobile truck bodies.
Automobile bus chassis.
Automobile bus bodies.
Truck and bus trailer and semitrailer chassis.
Truck and bus trailer and semitrailer bodies.

Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.

A sale of an automobile truck, bus, truck or bus trailer or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of a chassis and of a body enumerated in this paragraph.

2. Int.Rev.Code of 1954 § 4218:
(a) *General rule.*—If any person manufactures, produces, or imports an article (other than an article specified in subsection (b), (c), or (d) and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article taxable

under this chapter to be manufactured or produced by him), then he shall be liable for tax under this chapter in the same manner as if such article were sold by him. This subsection shall not apply in the case of gasoline used by any person, for nonfuel purposes, as a material in the manufacture or production of another article to be manufactured or produced by him.
* * *

(c) *Automotive parts and accessories.* —If any person manufactures, produces, or imports a part or accessory taxable under section 4061(b), and uses it (otherwise than as material in the manufacture or production of, or as a component part of, any other article to be manufactured or produced by him), then he shall be liable for tax under this chapter in the same manner as if such article were sold by him.
* * *

3. Treas.Reg. § 48.4061(a)–(1) (1963):
(d) *Nonhighway vehicles.* A chassis or body specified in section 4061(a) (see paragraph (a) of this section) which is not designed for highway use is not subject to the tax imposed by such section. The following are examples of vehicles which are not designed for highway use, and, therefore, not taxable: Road graders, bulldozers, power shovels, earth movers, farm tractors, motor-driven vehicles designed and adapted for use in pulling or drawing vehicles around the premises of factories and railway stations, and small trucks for handling baggage and trunks at railway stations.

ways; the pumping unit actually cannot be operated on the public highway in view of the vehicle's power takeoff arrangement.

These NOWSCO units are highly specialized conversion units, capable of furnishing nitrogen gas at specified pressures, volume, rates and temperatures to meet the widely varying requirements of Big Three customers. The units were invented in 1961, having the specifications of fairly standardized pumping trucks, which, through evolution and refinement had, by 1969, become extremely sophisticated and complex. The first models of the NOWSCO truck differed only as to the equipment placed upon them; later models embodied structural changes in the chassis.

Excise taxes were paid by plaintiff on portions of these units from January 1, 1961, through March 31, 1969. No tax was levied on the conversion unit as a whole, but only on three integral parts of the system: the tank, booster pump and cab or cowling. Tax was imposed on the purchase price of these components paid by plaintiff.

The pumping and conversion units are composed of two high pressure pumps, a booster pump to prime and increase the efficiency of the high pressure pump, a heating system pump, a heater, hot water glycol circuit, a heat exchanger or vaporizer, a coil system to pressurize the tanks, a Deutz engine for power to the heater, a heat system pump and an alternator which powers the booster pump, a control panel with elaborate instrumentation, a cab to protect both equipment and personnel during field operations, and a "drop frame" for equipment mounting. The components of the NOWSCO units are never used separately, but rather have only an integrated use or utility.

Many of the specialized features of the NOWSCO unit emphasize their off-highway use. NOWSCO trucks have a special differential ratio restricting their top speed to 56 miles per hour, and a special wheel articulation for service in oil field mud. There is a unique splitter box and power take-off which activates gears for the pumps instead of the drive line; that is, which transfers power *from* wheels *to* pump, so designed that it is impossible to pump and drive simultaneously. NOWSCO chassis have special snubber kits or stabilizer kits to minimize side sway in the rough terrain frequently encountered in oil fields. The units have special front and rear end suspension and special tires for oil field use. Longitudinal baffles, which prevent the sloshing of liquid from side to side, were introduced for use in the NOWSCO tanks *in addition to* the transverse baffles commonly encountered in tanks of highway transports, to prevent a capsizing of the vehicle in the steep or rough topography of oil fields. Tow pins, not placed on highway vehicles, are used on NOWSCO units to effect truck rescue operations from muddy drilling sites. NOWSCO trucks are frequently used on inland and offshore barges, and for that purpose are designed with diesel engines pursuant to federal regulations which disallow the use of gasoline engines for such offshore operations.

Big Three utilizes other equipment in the majority of its transport operations, and as a rule transports deliveries of liquid nitrogen, oxygen or argon on the highway in city pumpers and liquid transports.[4] In fact, because of their extremely high original cost and comparatively small capacity, the NOWSCO units cannot economically be used for the regular transportation and delivery of liquid nitrogen. Thus, although the transportation of nitrogen to industrial and pipeline jobs in NOWSCO tanks is frequently done, NOWSCO never sells liquid nitrogen. In fact, NOWSCO units with no liquid hauling have been used on large industrial jobs (General Electric Co., Union Carbide, Air Products), thereby pointing up that the pumping and

---

4. Plaintiff operates liquid transports for long distance, high volume transportation, and city pumpers for local service and supply. Both truck units are taxable.

liquid to gas conversion mechanism is the unit's primary function.

This basic utility is reflected in the revenue brought in by NOWSCO trucks. The rental of the pumper and converter with no transportation included is $15,-000 to $16,000 per month, as exemplified by various governmental and industrial rentals of the units where no liquid transportation was involved. NOWSCO's minimum service charge for pumping operations in 1967 was $250, of which the charge for mileage constituted $32 (80 round trip miles to job location at $.40 per mile per unit). This amounts to less than 13 percent of the $250 NOWSCO minimum charge. Consistent therewith, the revenue of NOWSCO units generated by the total mileage charge was a mere 6.6 percent to 6.9 percent of the total revenue derived from NOWSCO units. The same predominance of on-location use of NOWSCO units is demonstrated by a use time ratio, the off-highway use time being five times greater than on-highway use time. In fact, the average mileage that a NOWSCO vehicle is operated is only 14,000 miles per year, and this includes *off-highway mileage* in the oil fields, along pipelines, and inside industrial plants.

There are, however, certain characteristics of the NOWSCO trucks which bring them into the frame of reference of vehicles designed for highway use. For instance, all NOWSCO trucks are designed to comply with state highway and Interstate Commerce Commission regulations of certain items such as body width and lighting equipment. All are licensed to travel over the public highways in the states in which they operate. Moreover, the tanks which comprise a part of the NOWSCO units are interchangeable with, and in fact are commonly used for replacement of, tanks on the admittedly taxable city delivery trucks operated by Big Three. In performance of its basic function, i. e., converting liquid nitrogen into gas and pumping it at specified temperature and pressure for use in the oil fields, it is essential that the unit be transported, with or without liquid nitrogen, over the highways to the job site. Indeed, the vehicles completed approximately 3,500 jobs per year, with an average mileage per job of 120 miles.

There is no genuine dispute as to the fact that plaintiff is the manufacturer of the nitrogen conversion unit in question, or that all NOWSCO units are either sold or used by the producer as contemplated under §§ 4061(a) and 4218 of the Internal Revenue Code. Rather, plaintiff initially urges that the nitrogen conversion unit is not a part of the truck body, but rather constitutes the load of the truck which is being transported. Revenue ruling 69–506, holding that sales of rotary brooms and snowplow blades for cleaning were not taxable, stated:

> [T]his section of the regulations (§ 48.4061(b)–2(a)) also provides that an article is not considered to be a taxable part or accessory if the article is in effect the load being transported and the primary function of the article is to serve a purpose unrelated to the vehicle, even though the article is designed to be attached to the vehicle or primarily used with the vehicle.
>
> Rotary brooms and snowplow blades do not add to the utility of a vehicle in transporting persons or property over the highways. Rather, they employ the vehicle as the means of mobility and as a source of power.

This analysis as applied to the NOWSCO trucks is, in reality, highly tenuous and, therefore, is not relied upon by the Court in reaching its decision. Although the statutes and regulations provide no definition of a truck body as opposed to the load of the truck, legal comprehension of the term is found in King Trailer Co. v. United States, 228 F.Supp. 1013, 1017 (S.D.Cal.1964), aff'd, 350 F.2d 947 (9th Cir. 1965). In *King*, the Court found that a camper coach which was designed to be mounted on a pickup

truck body was not, for purposes of § 4061(a), a truck body:

> The coach does not really become a part of the truck carrying it. With or without the coach a pickup truck remains an integrated whole, consisting of a body and a chassis. Few people seeing a pickup truck driving about without such a coach upon it would think something was missing. One would not see a mere chassis going down the street; and, since no modification of the truck bed is necessary, one would simply see what appeared to be an ordinary pickup truck. If the coach is on the truck one sees a pickup carrying a coach. If it is not, one merely sees a pickup truck.

While this differentiation can be characterized as somewhat simplistic as applied to the intricacies of automobile and truck design, it adequately voices this Court's view in distinguishing between load and body in this case. Accordingly, this Court finds that the nitrogen conversion unit constitutes a portion of the NOWSCO truck body.

The controlling issue, therefore, is whether or not such truck body was designed for highway use so as to come within the provisions of § 4061(a) as a taxable item. Criteria established to determine design or adaptation of vehicles construe the tax provision as inapplicable to:

> [a]ny article, regardless of width, which is designed or adapted by the manufacturer for purposes predominantly other than the transportation of person or property on the highway even though incidental highway use may occur.

Rev.Rul. 57–440, 1957–2 Cum.Bull. 721. This revenue ruling clarifies the law further by providing "that the only vehicle chassis and body intended to be taxed by this section are those *primarily designed* for highway use." There is considerable dispute between the parties in this suit as to whether the test is one of "incidental use" or "primary design". The government relies, for its incidental use theory, on language found in Central Engineering Co. v. United States, 306 F.Supp. 667, 670 (E.D.Wis.1969):

> [I]f an article is designed for highway use, but in fact is not put to such use by the purchaser of the article, that article is still taxable * * * and * * * if an article is designed for both transportation of property over the highway and for off-highway use, and the *designed highway use is not incidental*, the article is taxable under § 4061(a).

This same opinion, however, is likewise cited by the plaintiff for the following conclusion of law:

> [T]he controlling test in determining taxability under § 4061(a) and (b) of the Internal Revenue Code of 1954 is whether the article in question was designed and manufactured *primarily or predominantly for other than transportation of person or property over the highway*. Because the tax imposed by [the Code] is one imposed on the manufacturer and not the consumer, it is the manufacturer's design rather than the customer's particular use of the article that is determinative. (emphasis supplied).

*Id.* at 671. I do not comprehend the quoted language as providing two mutually exclusive tests for taxability. In other words, the one seems to be a primary test, the other a secondary test to be reached only if the first is not dispositive. Thus, if the Court finds a manufactured item to be designed primarily for off-highway use, it must necessarily conclude that the designed highway use is incidental. But, if the Court finds an article to be designed for dual purposes, that is, for transportation over the highway and for off-highway use, and no primary design is evident, only then does the question of whether the designed highway use is merely incidental become important.[5]

---

5. *But see* Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930), where the Court held that if taxable and nontaxable designs were equal, the tax did not apply.

**1278**

That the primary design test is the correct legal standard seems to be widely accepted. In Southwest Wheel and Manufacturing Co. v. United States, 304 F.Supp. 225 (W.D.Tex.1969), the Court found that ammonia tank wagons designed and constructed for use on farms were not taxable even though incidental highway transportation occurred. And in Rev.Rul. 64–241, a mobile bandwagon was held not to be taxable under the following test:

> The mobile bandwagon described above is designed and constructed for use as a music shell, stage or reviewing stand, rather than for transporting property or persons over the highway. *The fact that it may be towed over the highway from one activity to another is incidental to its primary function.* Therefore, the bandwagon does not consist of a chassis or body of a type enumerated in § 4061(a) (1) of the Code, and is not subject to the manufacturer's excise tax on motor vehicle articles imposed in that section when sold by the manufacturer.

*See also* Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930); Rev.Rul. 69–506.

■■ Upon a review of the authorities, therefore, the Court finds the applicable legal test to be this: that vehicles designed or adapted for purposes primarily or predominantly other than for the transportation of persons or property on the highway, even though incidental highway use may occur, are not subject to the manufacturer's excise tax. It is further found that the NOWSCO nitrogen conversion units manufactured by the plaintiff were primarily designed and constructed for use in the oil fields, on pipelines, and other off-highway industrial job sites.[6] Such truck bodies are not taxable and are not subject to the manufacturer's excise tax.

■ The Court further finds that the United States is not entitled to recover on its cross complaint, but is entitled to a set off or credit of an amount represented to be $17,358.36 for reasons set out above in this opinion. Plaintiff is entitled to recover from the defendant the amount of the taxes paid for the period of January 1, 1961, to March 31, 1969, said sum represented by plaintiff to be $88,502.16 together with interest from March 31, 1971, to a date preceding the date of the refund check by not more than thirty (30) days, such date to be determined by the Commissioner of Internal Revenue. Counsel for the parties will submit an appropriate judgment incorporating by reference these Findings of Fact and Conclusions of Law and accurately reflecting the amount of plaintiff's recovery consistent with this Memorandum and Order.

---

6. The government admits that components of the nitrogen conversion units are not taxable except for the tank, booster pump and cowling. Recognizing the unitary design and use of the NOWSCO trucks, it seems illogical to this Court to find that only those three items constitute the taxable truck body, when they have either limited or no utility, absent the remaining components.