**OTIS ENGINEERING CORPORATION**

v.

**UNITED STATES of America.**

**No. CA 3-3443-C.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 30, 1974.

James K. Rushing and J. Edwin Fleming, Coke & Coke, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., and Eugene Sayre, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

This is a suit for the refund of manufacturer's excise tax and interest paid in the amounts of $6,468.00 and $833.54 respectively for calendar years 1961 through 1964, plus statutory interest.

The issue is whether the truck bodies that plaintiff Otis Engineering Corporation ("Otis") designed and built for its own use on mobile wire line service units are "automobile truck bodies" subject to the ten percent excise tax imposed by §§ 4061(a) and 4218 of the Internal Revenue Code of 1954.

This case was tried before the Court on September 24 and 25, 1973. This Memorandum Opinion is based on evidence presented at the trial and the briefs and argument of counsel, and is submitted in lieu of findings of fact and conclusions of law. As will be explained below, I have concluded that the items in question are not truck bodies primarily designed for highway transportation and thus are not taxable. Otis will be allowed to recover the taxes and interest paid, plus stautory interest.

During 1961 through 1963, Otis fabricated in its Dallas, Texas, shop wire line service units that it used in its business. The units were constructed so that one could be mounted on a truck chassis (that Otis had purchased and paid tax on). The Internal Revenue Service ("IRS") required Otis to pay an excise tax on the fabrication and use of the outer covering, or housing, of the units. The IRS contended that the housing or cover was an "automobile truck body" as mentioned in the code. There is no question about the amount of the tax involved; the only issue is whether Otis is subject to the tax.

Otis, at the insistence of the IRS, prepared and filed, on or about August 10, 1964, an IRS Form 720 (Quarterly Federal Excise Tax Return) for the period January 1, 1961, through December 31, 1963, reporting a tax of $6,468.00. Otis paid that tax and $833.54 in interest, or a total of $7,301.54, on September 23, 1964, to the IRS district director in Dallas. This amount, plus statutory interest, is the amount in issue in this case.

Otis, on or about September 21, 1966, timely filed a proper claim for refund of the tax and interest on Treasury Form 843, and the IRS disallowed the claim on May 15, 1968.

Otis, after the disallowance, timely brought this suit, alleging that the amounts were wrongfully, illegally and improperly collected because Otis' fabrication and use of the outer covering or housing was an integral part of the wire line units and did not subject it to the manufacturer's excise tax as a manufacturer of automobile truck bodies under the provisions of § 4061(a) as the IRS contended, and furthermore that the units were not subject to tax under any other provision of the code.

Otis is in the business of servicing oil and gas wells by use of its wire line service equipment. This equipment is used to insert wire line service tools and safety equipment into the well tubing, and to remove them from the tubing. The units always perform their services at the well, and the units have no other function.

The wire line service equipment and the cover or housing that is the item in contention in this case are fabricated as a single unit and then mounted on a truck chassis. Otis pays the proper manufacturer's excise tax on the chassis at the time of purchase. The completed wire line unit is designed so that it can be bolted to the truck chassis with four U-bolts. The entire unit can be removed with minimum effort in a relatively short time. The unit is powered through a power takeoff that, when it is in use, transfers power from the truck's drive train to a hydraulic pump. It is impossible to operate the unit while the truck is in motion. Each unit was equipped with tail lights, clearance and stop lights and turn signals, and each was designed to comply with state and federal regulations pertaining to lights, axle load and length and width. Each truck chassis was licensed with a fixed load-bearing capacity equal to the weight of a unit in place. Each vehicle was equipped with tow pins so it could be rescued from muddy drilling sites and so it could be towed to drilling sites that otherwise were inaccessible. Frequently, units were driven onto, and operated from, barges.

Of the total time Otis operated the units, 85.5 percent was at well sites. A portion of the remaining time was on-highway driving, and the rest was off-highway travel in the oil field between the highway and the well.

Otis cites the Court to a similar case and to several IRS Revenue Rulings. Because I find this case practically indistinguishable from the cited case, it will be discussed first. Big Three Industrial Gas and Equipment Co. v. United States, 329 F.Supp. 1273 (S.D.Tex. 1971), aff'd 459 F.2d 1042 (5th Cir. 1972), held that a nitrogen conversion unit was primarily designed and constructed for use in oil fields, on pipelines and other off-the-road job sites and therefore was not subject to the manufacturer's excise tax under § 4061(a). The court determined under the prevailing authorities that vehicles designed or adapted for purposes primarily or predominantly other than the transportation of persons or property on the highway, even though incidental highway use may occur, are not subject to the manufacturer's excise tax.

The ultimate issues before the court in the *Big Three* case were whether the nitrogen conversion unit in question was a truck body, and if so, whether it was designed for highway use. The units were manufactured for the plaintiff from parts purchased from others. The primary business in which the units were used was the furnishing of gaseous nitrogen to the oil and gas industries for use in servicing and completing wells. The conversion unit was permanently mounted on a truck chassis that transported it to various oil well, pipeline and industrial job sites. The unit always was operated at the job site off the public highways.

The trucks upon which the conversion units were mounted were designed to comply with state highway regulations as to width and lighting equipment. They were licensed to travel over the public highways. However, the tanks which comprised part of the conversion unit were interchangeable with and were

commonly used for replacement of tanks on plaintiff's taxable city delivery trucks.

The taxpayer in *Big Three* contended that the conversion unit was not taxable under the provisions of § 4061(a). The trial court and the Fifth Circuit Court of Appeals sustained the taxpayer's contention, and the government did not petition for a writ of certiorari.

The government unconvincingly attempts to distinguish the *Big Three* case and maintains that Otis failed to meet its burden of proof. The government's version of the court's holding in *Big Three* is that the units were found to be designed primarily for off-highway use because of alterations in their original design. But I find more similarities than differences when comparing the units in this case with those in *Big Three*: both complied with state and federal regulations as to dimensions and equipment, both had tow pins, both had a power takeoff which made it impossible to operate and travel simultaneously, both sometimes operated from barges, and most importantly both traveled on highways only on the way to or from off-road locations where they actually performed their intended tasks.

Judge Bue wrote in *Big Three*:

Upon a review of the authorities, therefore, the Court finds the applicable legal test to be this: that vehicles designed or adapted for purposes primarily or predominantly other than for the transportation of persons or property on the highway, even though incidental highway use may occur, are not subject to the manufacturer's excise tax. 329 F.Supp. at 1278.

I hold that Otis' units were designed principally for purposes other than the transportation of persons or property over the highway, even though incidental highway use did occur, and are not subject to the tax in question.

Otis has overpaid excise taxes on the wire line service units and is entitled to a refund and judgment against the United States in the amount of $7,301.54 plus interest at the rate of six percent per annum from September 24, 1964, to a date preceding the date of the refund check by not more than thirty days (which date is to be determined by the Secretary of the Treasury or his delegate), together with costs of this suit. Counsel are requested to confer and submit a proposed form of judgment for the Court to enter.