**FRANK HRUBETZ & CO., INC., Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 74–2263.**

United States Court of Appeals, Ninth Circuit.

Sept. 3, 1976.

Rehearing and Rehearing En Banc Denied Oct. 28, 1976.

George M. Joseph (argued), Portland, Or., for appellant.

Wm. A. Friedlander (argued), Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before MOORE,* KILKENNY and SNEED, Circuit Judges.

KILKENNY, Circuit Judge:

The facts in this case are fully delineated in the opinion of the district court in *Frank Hrubetz & Co., Inc. v. United States,* 412 F.Supp. 1033 (D.Or.1973). We hold that the findings of the court are not clearly erroneous and that it correctly applied the law to the facts. Accordingly, we affirm the judgment of the district court.

MOORE, Circuit Judge (dissenting):

The parties in their pre-trial order have agreed upon certain facts which define the nature of the action and the determinative issues.

* The Honorable Leonard P. Moore, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

Plaintiff-appellant, Frank Hrubetz and Company, is an Oregon corporation whose principal business activity is the manufacture and sale of amusement rides of the type frequently seen at itinerant carnivals.

The Commissioner of Internal Revenue determined that these amusement rides were subject to an excise tax imposed by Section 4061(a) of the Internal Revenue Code of 1954.

Plaintiff paid $790.05, the tax for the quarter of 1967 ending December 31, 1967 and brought this action to recover this amount as a tax allegedly overpaid. The defendant, in turn, filed a counterclaim for $45,223.18, being the amount of such taxes claimed by the Commissioner as due from the beginning of 1966 to and including the first quarter of 1970, namely, $46,013.23 less the $790.05 paid by plaintiff.

By no stretch of imagination can I conceive of these portable amusement carnival devices being placed in the category of "automobiles" and hence an allegedly taxable article as defined in Section 4061(a)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 4061(a)(1), *as amended,* 26 U.S.C. § 4061(a)(1) (Supp.1976).[1] Indeed, none of the devices here involved bears the slightest resemblance to such chassis. Rather, these devices, in my opinion, fall squarely within Treasury Regulations on Manufacturers and Retailers Excise Tax, 26 C.F.R. § 48.-4061(a)–1. "A chassis . . . which is not designed for highway use is not subject to the tax imposed by such section." The courts in their ivory towers are not (or at least should not be) so removed from the worldly scene as not to be aware of the itinerant amusement carnivals which appear in town after town on a vacant or, if possible, a corner lot where for a period of time they afford amusement to young and old alike and then "fold their tents, like the Arabs, and . . . silently steal away."[2] They are able to do so in this case because plaintiff has been inventively resourceful enough to install wheels under the amusement devices so as to move them over the highway to the next stopping place where they are anchored down firmly and resume their appointed operations.

More explicitly the four devices here involved are (1) "Round-Up", a tilted wheel 29 feet in diameter which for such customers as feel the necessity for so doing, standing in an upright position, will revolve in them at 18.5 rpm; (2) for those who have survived this ordeal, there is the "Paratrooper", a wheel 42 feet in diameter which, at a 45° angle, rotates passengers safely seated in swinging cars; (3) "Tip Top" is 35 feet in diameter and its fiberglass cars only rotate 9 rpm, but to compensate for the slow speed, the passenger can never tell what will next occur because the angle from which he views the world is constantly changing; and (4) a "Portable Slide" 40 feet in length which, after the slide, restores the customer to *terra firma* or the equivalent thereof. How these four devices which can operate for their intended purpose only off-highway and when firmly affixed to the ground can be classified as "a trailer or semi-trailer chassis or body primarily designed for highway use" is beyond my conception. But the Regulations and Revenue Rulings bring common sense into the picture by specifically excluding "any

---

1.  26 U.S.C. § 4061(a)(1) *as amended,* 26 U.S.C. § 4061(a)(1) (Supp.1976) provides:

    "*Imposition of tax*
    (a) *Automobiles.*—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:
    (1) Articles taxable at 10 percent, except that on and after October 1, 1972, the rate shall be 5 percent—

    Automobile truck chassis.
    Automobile truck bodies.
    Automobile bus chassis.
    Automobile bus bodies.
    Truck and bus trailer and semitrailer chassis.
    Truck and bus trailer and semitrailer bodies.
    Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer."
    [This statute has been amended almost annually. These amendments have been omitted as they are not material.]

2.  Henry Wadsworth Longfellow, "The Day is Done", st. 11.

article, regardless of the width, which is designed, or adapted by the manufacturer for purposes predominantly other than the transportation of persons or property on the highway even though incidental highway use may occur." Rev.Rul. 57–440, 1957–2 Cum.Bull. 721 at 722. Obviously these devices are not designed for the "transportation of persons or property". Even if they could travel in an unfolded position, the number of persons willing to be transported along a highway while revolving at a 45° angle would be *de minimis*. In short, plaintiff here has not created a chassis on which it could superimpose a device. To the contrary, it merely added wheels to the frames which support the device when functioning in its stationary location.

Before 1954 the rides had to be mounted on trailers to be moved, but since then the manufacturer eliminated the need for mounting, without substantially altering the frame design, by simply adding wheels, brake lights and a few other accessories to the frames. This undisputed description should suffice to resolve the controversy. These devices are not trucks, buses, or trailers, and consequently, their support frames are not truck, bus or trailer "chassis".

This conclusion is supported and confirmed by both the statutory language and all arguably relevant legal precedent. Beginning with the statute, it confines the objects of the tax to those chassis which are part of a bus, truck or semi-trailer. Thus, if doubt there be in this case, it should be resolved by examining the device as part of the completed unit, for even if the object sought to be taxed were a chassis, it would not be taxable unless it were part of a truck, bus or semi-trailer. And in this case, even if we were to look only to those instances when the rides are being transported on the highway, it should be immediately apparent that they are unlike buses, trucks and trailers in one crucial and dispositive respect among many others—namely, they cannot carry and do not carry passengers or freight.

Even if one were to focus solely upon the frame itself, the conclusion would be the same. Clearly the frames were designed by the manufacturer long before the idea of adding wheels was conceived. Thus, the only possible use for which they were intended was as a stationary foundational support for an amusement ride. And the focus, at least in this Circuit, is on intended primary use or design, not every conceivable innovative adaptation. *King Trailer Co. v. United States*, 228 F.Supp. 1013 (S.D.Cal. 1964), aff'd 350 F.2d 947 (9th Cir. 1965). Judge Ely, writing for the Court (Chambers, Barnes and Ely, C. JJ.) said at 948:

"We have no doubt that the portable dwelling unit in question does not fall within the classification of 'automobile truck bodies' or of 'automobile accessories', as these statutory terms must be ordinarily and reasonably construed. Yet, even should a reasonable doubt exist, our duty is to resolve it in favor of the taxpayer. *Crooks v. Harrelson, supra*, 282 U.S. [55], at 61, 51 S.Ct. 49 [5 L.Ed. 156]; *United States v. Merriam, supra*, 263 U.S. [179], at 188, 44 S.Ct. 69 [68 L.Ed. 240]."

When the wheel adaptation was made, the frame design was left substantially unaltered.

If one need furrow further for guidance, both past and proposed future administrative interpretation of the excise tax statute by the Internal Revenue Service point toward nontaxability. In Revenue Ruling 64–241, 1964–2 Cum.Bull. 412, the Service advised that no part of a mobile "bandwagon" was taxable. The description of the bandwagon bears a striking resemblance to the amusement rides involved here. It was equipped with the necessary wheels and accessories that would allow it to be transported over the highway, but when the

"wagon is being used for its intended purpose, one side is raised canopy-like to form an acoustically designed shell intended to project sound evenly over a wide area. Retractable jacks are lowered to provide support."

The Revenue Ruling held:

"The mobile 'band wagon' described above is designed and constructed for use

as a music shell, stage, or reviewing stand, rather than for transporting property or persons over the highway. The fact that it may be towed over the highway from one activity to another is incidental to its primary function. Therefore, the 'band wagon' does not consist of a chassis or body of a type enumerated in section 4061(a) of the Code, and is not subject to the manufacturers excise tax on motor vehicle articles imposed by that section when sold by the manufacturer."

The lower court thought this case would be relevant only if the Government were to attempt to tax the amusement rides in their entirety. But it is apparent from reading the Ruling that the Service knew that chassis were separately taxable under the statute and its conclusion that nothing is taxable necessarily encompasses all of the bandwagon's constituent parts including the chassis. Moreover, the very same holistic approach that was followed by the Service in the Revenue Ruling is mandated by the statute even where the Government seeks to tax only the chassis. Thus, that ruling indicates that no part of an amusement ride, just as no part of a bandwagon, is taxable.

The amusement rides also would be nontaxable under the proposed new regulations. 41 F.R. 768 (1976). These regulations mandate that in determining whether a chassis is taxable, the vehicle must be examined as a completed unit. The unit is not taxable if it carries permanently mounted machinery whose operation is unrelated to transportation,[3] the chassis has been specially designed as a mount for such machinery, and by reason of the design, the chassis could not carry other loads without substantial structural modification. The instant amusement rides easily satisfy all of these prerequisites of nontaxability. See 41 F.R. 771, Proposed Regulation § 48.4061(a)–1(d)(2). Although these regulations are still being promulgated, they, nonetheless, are telling evidence that the result mandated

by previous rulings will continue unchanged.

A chorus composed of this Circuit's precedent, administrative interpretation—both past and future—and common sense, proclaims the inescapable conclusion that the frames of these amusement rides are not taxable semi-trailer, bus or truck chassis. In *Big Three Gas & Equipment Company v. United States,* 329 F.Supp. 1273 (S.D.Tex. 1971), *aff'd on opinion below,* 459 F.2d 1042 (5th Cir. 1972), the trial court said at 1278:

"Upon a review of the authorities, therefore, the Court finds the applicable legal test to be this: that vehicles designed or adapted for purposes primarily or predominantly other than for the transportation of persons or property on the highway, even though incidental highway use may occur, are not subject to the manufacturer's excise tax. . ."

Having restated the issue, the question remains: is the intended use primarily transportational or not? The facts of this case leave only one possible answer. These amusement rides are best described by their names. To say that they or any part of them are designed for transportational use ignores their prime—in fact, only—function.

To hold that the findings of the Court below "are not clearly erroneous" is tantamount to saying that a merry-go-round or other similar carnival device moving down a highway falls into the category of a transportational bus and in itself, in my opinion, would be "clearly erroneous". Any pedestrian hailing such a merry-go-round as a transportational vehicle would clearly indicate that he had already too much enjoyed the carnival spirit. As to the application of the facts of this case to the law of this Circuit, and even the Commissioner's own pronouncements on the subject, I can only refer to the cases and interpretations al-

---

3. The proposed regulation states:

"(A) consists of a chassis to which there has been permanently mounted machinery or equipment to perform a construction, manu-

facturing, farming, mining, timbering, or similar operation, if the operation of the machinery or equipment is unrelated to transportation on or off the public highway . . ."

ready above recited. For these reasons I feel that I must record my dissent.

I would reverse the judgment of the District Court.