**DILLON RANCH SUPPLY, a corporation, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 78–3386.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 3, 1980.

Decided Aug. 7, 1981.

John A. Dudeck, Jr., Washington, D. C., argued for defendant-appellant; Gary R. Allen, Washington, D. C., on brief.

John R. Kline, Kline & Niklas, Helena, Mont., for plaintiff-appellee.

Before ALARCON and CANBY, Circuit Judges, and HOFFMAN,* District Judge.

WALTER E. HOFFMAN, Senior District Judge:

This case involves the issue of the taxability of certain flatbed trailers and related attachments which are manufactured or assembled by Dillon Ranch Supply. Specifically, the Government appeals from a judgment of the United States District Court for the District of Montana which ordered the United States to refund to Dillon Ranch Supply the manufacturers' excise tax paid by taxpayer for the fourth quarter of 1972 through the second quarter of 1975, in the amount of $12,882.71, plus interest.[1] For reasons stated herein, we reverse.

---

* Honorable Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

1. Judgment of the District Court further ordered that taxpayer may recover additional refunds of excise taxes for the quarters involved herein upon filing additional timely written consents from the ultimate purchasers of trailers and related attachments who consent to the allowance of such refunds in accordance with Section 6416 of the Internal Revenue Code of 1954 (26 U.S.C.).

The facts are essentially undisputed. Dillon Ranch Supply is a Delaware corporation with its principal place of business in Dillon, Montana. It is engaged in the business of manufacturing, assembling, and selling supplies and equipment, including but not limited to gooseneck, flatdeck, self-ramping trailers and attachments which may be mounted on such trailers. During the tax periods at issue in this case, taxpayer was a distributor of "Maverick" brand trailers. It assembled the trailers from components which, except for the tires and wheels, were imported by Dillon Ranch Supply from Maverick M/C Manufacturing Co. Ltd., of Fort MacLeod, Alberta, Canada.

A. *Facts pertinent to the "Maverick" brand flatbed, gooseneck trailers.*

The standard "Maverick" brand trailers sold by taxpayer consisted essentially of a large flat deck mounted on a chassis with moveable tandem or triple axle undercarriages. As illustrated by the photographs and advertisements in the record, the trailers were suitable for transporting a broad range of products and commodities.

The chassis frame and trailer deck varied in length from 18 feet through 30 feet and, with minor exceptions, were 8 feet in width to conform with the size limitations prescribed for travel on the interstate highway system.[2] They were rated by taxpayer as having gross vehicle weight capacities between 14,000 and 20,000 pounds. The main frame of the trailers was "very strong" seamless steel tubing with cross members and center bracing to prevent twisting of the frame under uneven loads. The trailer decks were solidly built with 2 inch by 8 inch fir deck boards mounted crosswise for stronger construction and supported by 1 inch angle iron and seamless tubing. Deck height was 3 feet off the ground.

Although the trailers were adaptable for use with practically any type and size of pulling vehicle, Dillon Ranch Supply's advertisement emphasized that the trailers were designed for use by ½ ton, ¾ ton, and 1 ton pick-up trucks as the principal towing vehicle. The trailers featured "fifth wheel" hitches with adjustable goosenecks to accommodate various heights of pulling vehicles. These fifth wheel hitches operated on the same principles as used on large highway tractor-trailers and they had sufficient surface space to prevent "careening" of the trailer while turning. In addition, a farm tractor hitch was available for the trailers as an option.

The trailers were built on either tandem axles or triple axles. They were certified as having a weight capacity per axle of either 6,000 or 7,000 pounds. The axles were mounted on moveable undercarriages which could slide to a position within 48 inches of the rear of the chassis. This feature enabled the operator to properly distribute the weight between the pulling vehicle and the trailer. Depending upon the placement of the trailer axles, approximately 9 to 14 percent of the weight on the trailer could be shifted to the pulling vehicle, thereby increasing the gross vehicle weight capacity of the trailer. The moveable axle assemblage also contributed to the overall stability and highway maneuverability of the trailers. A special design feature permitted the axles to be moved to the extreme front of the chassis, the trailer deck tilted, thereby forming a ramp to assist in loading and unloading.

Each trailer sold by Dillon Ranch Supply had affixed to it a tag certifying that, as of the date of manufacture, it conformed with the federal safety standards applicable to highway vehicles. Thus, each trailer was outfitted with dual stop lights and turn lights which met or exceeded applicable Department of Transportation requirements. Similarly, the trailers were equipped with standard highway certified tires with ratings up to 3,100 pounds. Finally, the trail-

---

**2.** The first 10 to 15 Maverick trailers sold by plaintiff, which are here involved, were designed by specification for an overall width of 8.2 to 8.6 feet. Such trailers were approximately 2 to 6 inches in excess of the width prescribed for travel on the Interstate Highway System. Thereafter, at plaintiff's request, the manufactured widths of the trailers were reduced to 8 feet to conform to Interstate requirements for highway vehicles.

ers featured electric brakes rated at 5,200 pounds per wheel (excluding the brake rating of the pulling vehicle), and heavy duty springs, equalizers, and rubber shackles.

Advertisements prepared by taxpayer emphasized that the trailers complied with the federal highway motor vehicle safety standards. Other advertisements prepared by Maverick stressed that the trailers could be used for a broad range of activities, many of which involved the transportation of loads over the public highways. Accordingly, one of the advertisements stated that the trailers could be used for the following applications:

What Are Its Applications?
For the transportation of many products and commodities. The trailer affords a large deck, making it especially suitable for bulky, long and irregular loads, machinery, hay, livestock, campers, pallets; the new containerized method of freight handling, furniture, building material, etc.

The advertisement then listed numerous businesses which use the "Maverick" brand trailers, including distributors, manufacturers, movers, an oil company, a steel company, lumber yards, modular home manufacturers, livestock dealers, an automobile dealer, and a Government utility in Canada.

B. *Facts Pertinent to the Optional Trailer Accessories and Attachments.*

Dillon Ranch Supply sold a number of optional attachments designed for use with the "Maverick" brand trailers. The accessories include, *inter alia*, detachable cattle racks, a haying attachment for hauling and stacking hay, and grain boxes. All of the attachments (excluding three cattle racks) were also manufactured by Maverick M/C Manufacturing Co., Ltd., in Canada.

The cattle racks were one piece bodies constructed with tubular steel, covered on the interior with plywood. Excluding the floors, these racks were self-contained units which could be used for transporting cattle and other livestock. The cattle racks were designed to be quickly mounted on the flatbed deck of a "Maverick" trailer by one

man with out tools. The haying attachment consisted of an 8,000 pound electric winch, a hay ejector with a traveling head gate, and a hay tie down. This accessory mounted on the deck of the trailer with 4 bolts and it could be used to move and stack up to 7 to 9 tons of baled hay, loose hay, silage or chopped hay. Finally, the grain box available as an option on the trailers was a self-contained removable body which was complete in itself. It featured a 12-volt hydraulic hoist and had a capacity of up to 360 bushels when used as an accessory with the triple axle Maverick trailer.

C. *Proceedings Below.*

At some time prior to July 13, 1973, Internal Revenue Service Agent Tom Harris began an investigation into taxpayer's liability for federal manufacturers' excise tax on its sales of Maverick brand trailers and related accessories and equipment. After conducting a field investigation, Agent Harris subsequently requested technical advice from the National Office of the Internal Revenue Service concerning the taxability of the vehicles and related attachments. Thereafter, the national office issued a technical advice memorandum to the District Director of the Internal Revenue of the Helena, Montana District, regarding the trailers in question, concluding that the trailers were subject to tax under Section 4061(a) of the Internal Revenue Code of 1954. The memorandum concluded the trailers were taxable because their overall design characteristics allowed them to be used for general purpose hauling on the public highways, as well as for hauling on farms.

The Commissioner of Internal Revenue subsequently assessed federal excise taxes for the fourth quarter of 1972 through the second quarter of 1975 on taxpayer's sales of trailers and related accessories and attachments. Dillon Ranch Supply paid those assessments, filed timely claims for refund, and upon their denial, brought the instant suit for refund.

The district court held that the Maverick trailers were "farm wagons" primarily designed for use on the farms within the

meaning of Section 4063(a)(2) of the Internal Revenue Code, although they may be used on the highway, also.[3] Additionally, the court held that the stock racks and haying attachments [4] were exempt from the manufacturers' excise tax imposed by Section 4061(a)(1) as accessories to vehicles excluded from the provisions of Section 4061(a). The district court failed to make a finding as to the taxability of the grain box attachment of the Maverick trailer. We reverse and remand the case for further proceedings consistent with this opinion.

### D. Applicable Sections of the Internal Revenue Code.

Section 4061(a)(1) [5] of the Internal Revenue Code of 1954 imposes a ten-percent excise tax on sales by manufacturers or importers of certain enumerated articles, including truck trailer and semi-trailer chassis and bodies. Although an exemption

from taxation does not appear on the face of the statute, the Treasury Regulations promulgated thereunder have long exempted vehicles which are not designed for highway use.

Section 4061(a)(2) [6] exempts from the excise tax imposed by Section 4061(a)(1) truck trailer and semi-trailer chassis and bodies, suitable for use with a trailer or semitrailer having a gross vehicle weight of 10,000 pounds or less. The district court failed to make a finding as to the applicability of this exemption. Although Dillon Ranch Supply relied on this exemption in this action below, the issue is not before this Court on appeal.

Section 4063(a)(2) [7] specifically excludes from taxation bodies, parts, or accessories which would otherwise be subject to taxation under section 4061(a)(1), that are primarily designed for use on farms as certain feed, seed, or fertilizer equipment.

3. The court did not reach taxpayer's alternative contention that the trailers were exempt under Section 4061(a)(2) of the Code as "light-duty" trailers having a gross vehicle weight of 10,000 pounds or less.

4. The United States does not appeal the judgment of the district court with respect to the haying attachment.

5. Section 4061(a)(1) states as follows:

Tax imposed.—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax of 10 percent of the price for which so sold, except that on and after October 1, 1977, the rate shall be 5 percent—

Automobile truck chassis.
Automobile truck bodies.
Automobile bus chassis.
Automobile bus bodies.
Truck and bus trailer and semitrailer chassis.
Truck and bus trailer and semitrailer bodies.
Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.

A sale of an automobile, truck, bus, truck or bus trailer or semitrailer shall, for the purpose of this subsection, be considered to be a sale of a chassis and of a body enumerated in this subsection.

6. Section 4061(a)(2) states:

Exclusion for light-duty trucks, etc.—The tax imposed by paragraph (1) shall not apply to a sale by the manufacturer, producer, or import-

er of the following articles suitable for use with a vehicle having a gross vehicle weight of 10,000 pounds or less (as so determined).

(b) [as amended by Sec. 201(b)(2), Excise Tax Reduction Act of 1965, P.L. 89–44, 79 Stat. 136 and Sec. 303(a)(4), Act of December 31, 1970, P.L. 91–605, 84 Stat. 1713, 1714] Parts and Accessories.—

(1) Except as provided in paragraph (2), there is hereby imposed upon parts or accessories (other than tires and inner tubes), for any of the articles enumerated in subsection (a)(1) sold by the manufacturer, producer, or importer a tax to 8 percent of the price for which so sold, except that on and after October 1, 1977, the rate shall be 5 percent.

7. Section 4063(a)(2) reads as follows:

[as amended by Sec. 801(a), Excise Tax Reduction Act of 1965, supra] Specified Articles.—

\*　　\*　　\*　　\*　　\*　　\*

(2) Feed, seed, and fertilizer equipment. —The tax imposed under section 4061 shall not apply in the case of any body, part or accessory primarily designed—

(A) to process or prepare seed, feed, or fertilizer for use on farms;

(B) to haul feed, seed, or fertilizer to and on farms;

(C) to spread feed, seed, or fertilizer on farms;

(D) to load or unload feed, seed, or fertilizer on farms; or

(E) for any combination of the foregoing.

E. *Regulations Promulgated Under Section 4061(a)(1).*

The Treasury Regulations promulgated under Section 4061(a)(1) supply the controlling definitions regarding the applicability of the excise tax to particular vehicles. Section 48.4061(a)–1(d) of the Treasury Regulations on Manufacturers' and Retailers Excise Tax as revised [T.D. 7461, 1977 Cum.Bull. 317] [8] contains detailed defini-

8. 48.4061(a)–1 [as amended by T.D. 7461, 1977–1 Cum.Bull. 317] *Imposition of tax; exclusion for light-duty trucks, etc.*
(a) *Imposition of tax.*—(1) *In general.*

\* \* \* \* \* \*

(2) *Special rule applicable to chassis and bodies.* A chassis or body enumerated in paragraph (a)(1) of this section is taxable under section 4061(a)(1) only if such chassis or body is, within the meaning of paragraph (e) of this section, sold for use as a component part of a highway vehicle (as defined in paragraph (d) of this section), which is an automobile truck or bus, a truck or bus trailer or semitrailer, or a tractor of the kind chiefly used for highway transportation with a trailer or semitrailer. Furthermore, a chassis or body which is not enumerated in paragraph (a)(1) of this section is not taxable under section 4061(a)(1) even though such chassis or body is used as a component part of a highway vehicle (e. g., a chassis or body of a passenger automobile).

\* \* \* \* \* \*

(d) *Highway vehicle.*—(1) *Definition.* For purposes of this subchapter, the term "highway vehicle" means any self-propelled vehicle, or any trailer or semitrailer, designed to perform a function of transporting a load over public highways, whether or not also designed to perform other functions, but does not include a vehicle described in paragraph (d)(2) of this section. For purposes of this definition, a vehicle consists of a chassis, or a chassis and a body if the vehicle has a body, but does not include the vehicle's load. Therefore, in determining whether a vehicle is a "highway vehicle", it is immaterial that the vehicle is designed to perform a highway transportation function for only a particular kind of load, such as passengers, furnishings and personal effects (as in a house, office, or utility trailer), a special type of cargo, goods, supplies, or materials, or, except to the extent otherwise provided in paragraph (d)(2)(i) of this section, machinery or equipment specially designed to perform some off-highway task unrelated to highway transportation. In the case of specially designed machinery or equipment, it is also immaterial, except as provided in paragraph (d)(2)(i) of this section, that such machinery or equipment is permanently mounted on the vehicle. For purposes of paragraph (d) of this section, the term "transport" includes the term "tow", and the term "public highway" includes any road (whether a Federal highway, State highway, city street, or otherwise) in the United States which is not a private roadway. A vehicle which is not a highway vehicle within the meaning of this paragraph shall be treated as a nonhighway vehicle for purposes of this subchapter. Examples of vehicles that are designed to perform a function of transporting a load over the public highways are passenger automobiles, motorcycles, buses, and highway-type trucks, truck tractors, trailers, and semitrailers.

(2) *Exceptions*—(i) *Certain specially designed mobile machinery for non-transportation functions.* A self-propelled vehicle, or trailer or semi-trailer, is not a highway vehicle if it (A) consists of a chassis to which there has been permanently mounted (by welding, bolting, riveting, or other means) machinery or equipment to perform a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations, if the operation of the machinery or equipment is unrelated to transportation on or off the public highways, (B) the chassis has been specially designed to serve only as a mobile carriage and mount (and a power source, where applicable) for the particular machinery or equipment involved, whether or not such machinery or equipment is in operation, and (C) by reason of such special design, such chassis could not, without substantial structural modification, be used as a component of a vehicle designed to perform a function of transporting any load other than that particular machinery or equipment or similar machinery or equipment requiring such a specially designed chassis.

(ii) *Certain vehicles specially designed for off-highway transportation.* A self-propelled vehicle, or a trailer or semitrailer, is not a highway vehicle if it is (A) specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations, and (B) if by reason of such special design, the use of such vehicle to transport such load over the public highways is substantially limited or substantially impaired. For purposes of applying the rule of (B) of this subdivision, account may be taken of whether the vehicle may travel at regular highway speeds, requires a special permit for highway use, is overweight, overheight or overwidth for regular highway use, and any other relevant considerations. Solely for purposes of determinations under this para-

tions of taxable highway vehicles. These revised regulations apply retroactively to sales made in prior periods except to the extent the prior Regulations, if applicable, would "unequivocally resolve" the question. 26 C.F.R. § 48.4061(a)–(1)(d)(3).

### 1. *Prior Regulations.*

The prior regulations [9] [§ 48.4061(a)–1 (as promulgated by T.D. 6648, 1963–1 Cum. Bull. 197)] may be determinative of this case to the extent such regulations "unequivocally resolve" the question of taxability under section 4061(a)(1).

The courts [10] have utilized a two-prong test to determine the taxability of an article under the previous regulations. The first test was whether a chassis or body was primarily designed "for purposes of transportation over the public highways." If the vehicle was determined to be primarily designed for transportation over the public

graph (d)(2)(ii), where there is affixed to the vehicle equipment used for loading, unloading, storing, vending, handling, processing, preserving, or caring for a load transported by the vehicle over the public highways, the functions are related to the transportation of a load over the public highways even though such functions may be performed off the public highways.

(iii) *Certain trailers and semi-trailers specially designed to perform non-transportation functions off the public highways.* A trailer or semi-trailer is not a highway vehicle if it is specially designed to serve no purpose other than providing an enclosed stationary shelter for the carrying on of a function which is directly connected with and necessary to, and at the off-highway site of, a construction, manufacturing, processing, mining, drilling, farming, timbering, or operation similar to any one of the foregoing enumerated operations such as a trailer specially designed to serve as an office for such an operation.

(3) *Optional application.* For purposes of this subchapter, if any rules existing immediately prior to January 13, 1977 would, if applicable, unequivocally resolve an issue involving the definition of a highway vehicle with respect to a period prior to such date, at the option of the taxpayer, such rules existing prior to such date shall be applied to resolve the issue for all periods prior to such date, and rules of paragraph (d)(1) and (2) of this section, which define the term "highway vehicle", shall not apply with respect to such issue for all periods prior to such date.

**9.** Treasury Regulations on Manufacturers and Retailers Excise Tax (1954 Code) (26 C.F.R. Rev. Apr. 1976):

§ 48.4061(a)–1 [as promulgated by T.D. 6648, 1963–1 Cum.Bull. 197] *Imposition of tax.*

\* \* \* \* \* \*

(d) *Nonhighway vehicles.*—A chassis or body specified in section 4061(a) (see paragraph (a) of this section) which is not designed for highway use is not subject to the tax imposed by such section. The following are examples of vehicles which are not designed for highway use, and, therefore, not taxable: Road graders, bulldozers, power shovels, earth movers, farm tractors, motor-driven vehicles designed and adapted for use in pulling or drawing vehicles around the premises of factories and railway stations, and small trucks for handling baggage and trunks at railway stations.

(e) *Trailers.* (1) A trailer or semitrailer chassis or body primarily designed for highway use in combination with a taxable truck, bus, or tractor is subject to the tax imposed by section 4061(a)(1). Trailer and semitrailers which are suitable for use in combination with passenger automobiles, but which are not house trailers, are subject to the tax imposed by section 4061(a)(2). A trailer designed for use in combination with a passenger automobile which is to be used for purposes other than living or sleeping, commonly referred to as a "utility trailer," is an example of a trailer taxable under section 4061(a)(2). The tax attaches even though the trailer or semitrailer may have equipment to perform functions other than in connection with the transportation of property or persons. However, no tax under section 4061(a) attaches to that part of the selling price of the complete unit which is reasonably attributable to such equipment provided that such part of the selling price is billed separately on the invoice to the customer or can be otherwise established by adequate records.

(2) Examples of trailers and semitrailers subject to the tax imposed by section 4061(a)(1) are:

(i) General purpose pole trailers, combination pole and cable reel trailers, transformer trailers, machinery trailers, tilt-top implement trailers, reel dollies, pole dollies, and highway logging dollies.

(ii) Low-bed trailers or semitrailers designed for transporting heavy equipment over the highways.

(3) A farm wagon primarily designed for use on farms, although it may be used on the highway, illustrates a type of vehicle which is not a trailer within the meaning of section 4061(a).

**10.** *See generally: Frank Hrubetz & Co. v. United States,* 412 F.Supp. 1033 (D.Ore.1973), *aff'd,* 542 F.2d 512 (9th Cir. 1976); *Big Three Industrial Gas & Equipment Co. v. United States,* 329 F.Supp. 1273 (S.D.Tex.1971), *aff'd,* 459 F.2d 1042 (5th Cir. 1972).

highways, the vehicle was taxable. The second test was employed if no primary design was evident and the chassis or body was designed for both on-highway and off-highway use. The vehicle would be taxable under this test unless the designed highway use was "merely incidental" to its non-highway function.

### 2. Revised Regulations.

■ Under the revised regulations, any trailer or semitrailer designed to perform a function of transporting a load over the public highways is subject to the excise tax imposed by Section 4061(a)(1). Such trailer or semitrailer is subject to taxation, whether or not it is also designed to perform other functions, unless it falls within one of three specified exceptions.

■ The exception which is potentially relevant in this case is the second enumerated exception involving vehicles "specially designed" for certain off-highway functions. In order to fall within this exception it must be shown: (1) that the vehicle is "specially designed" for the primary function of transporting a particular type of load off the highway in connection with various enumerated activities (including farming, mining, timbering, or any operation similar to the foregoing examples); and (2) that, by reason of such special design, the use of such vehicles to transport a load over the public highways is "substantially limited or substantially impaired." In applying this test, the regulation further provides that account should be taken of factors such as whether the trailer may travel at normal highway speeds and whether special permission is required for highway use, etc.

### F. The Maverick Trailers.

■ The district court held that the revised regulations do not establish a test for determining whether vehicles are taxable under section 4061(a)(1). The court concluded that the revised regulations serve

"merely an exemplary purpose". However, it is well-settled that Treasury Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). *Accord: Bingler v. Johnson*, 394 U.S. 741, 750, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969); *Fulman v. United States*, 434 U.S. 528, 98 S.Ct. 841, 55 L.Ed.2d 1 (1978).[11]

■ Regulations issued pursuant to specific statutory authorization are legislative regulations. Such legislative regulations, if consistent with statutory authorization, adopted pursuant to proper procedure, and are reasonable, have the force of law. *United States v. California Portland Cement Company*, 413 F.2d 161 (9th Cir. 1969); *Anderson, Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978). Moreover, the United States Supreme Court in *United States v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967), emphasized the role of the courts in construing Treasury Regulations:

Congress has delegated to the Commissioner, not to the courts, the task of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, "it is the province of Congress and the Commissioner, not the courts, to make appropriate adjustments." *Commissioner v. Stidger*, 386 U.S. 287, 296 [87 S.Ct. 1065, 1071, 18 L.Ed.2d 53]. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner.

389 U.S. at 307, 88 S.Ct. at 449. Thus, the district court erred in summarily dismissing the applicability of the revised regulations.

Moreover, the lower court neglected to adequately examine the applicability of the

---

11. The reasonableness of the revised Treasury Regulations is raised by Dillon Ranch Supply

for the first time on appeal.

prior regulations promulgated by the Secretary of Treasury. In approving the test advanced by the taxpayer, Dillon Ranch Supply, the court stated:

> Dillon Ranch Supply asserts that the test therefore is that those vehicles that are designed and *sold primarily for use* off the highway are not to be taxed, *rather than* that all vehicles are taxable regardless of the use for which they were primarily designed unless there is a design characteristic that actually limits their use to off-highway. [emphasis added]

Thus, the court accepted taxpayer's test to determine taxability concluding: "If the vehicle or accessory is primarily designed for any of the farm uses enumerated in I.R.C. § 4063(a)(2), the excise tax does not apply."

The "proper test", as so designated by the lower court, embodies the "primary design" concept, which comprised the test as to taxability under the prior regulations. The court also incorporated § 4063(a)(2) in deriving this "proper test" of taxability stating: "If the vehicle or accessory is primarily designed for any of the farm uses, the excise tax does not apply." However the emphasis of the court on § 4063(a)(2) in formulating the "proper test" is misplaced. Section 4063(a)(2) of the Internal Revenue Code covers only bodies, parts or accessories and does not, by its own terms, apply to vehicles or chassis.

The court concluded that the Maverick trailer was primarily designed to be used as a "farm wagon", an example of a nontaxable trailer under the prior regulations. Accordingly, it held that the Maverick trailer was nontaxable as "[a] farm wagon primarily designed for use on farms, although it may be used on the highway [which] illustrates a type of vehicle which is not a trailer within the meaning of section 4061(a)." In reaching its conclusion that the trailers were nontaxable "farm wag-

ons" the court relied on its findings of fact pertaining to the primary use of the trailers.[12] The test for taxability under § 4061(a)(1) is primary *design*, not primary *use*, under both the old and new Treasury Regulations. Indeed a use test would be unworkable since there would be no way of knowing how a given article would be used by the consumer at the time of sale.

Accordingly, this case is remanded to the district court. On remand, the court should begin its analysis as to the taxability of the Maverick trailers with the revised regulations. Such Treasury Regulations are controlling unless found to be "unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Co., supra.*

Section 48.4061(a)–1(d)(3) provides that, for periods prior to January 3, 1977 (date of promulgation of revised regulations), the taxpayer may have the option of continuing to apply the rules existing during such periods (the prior regulations), but only if those rules "would, if applicable, unequivocally resolve an issue involving the definition of a highway vehicle" for those earlier periods. Therefore, if taxpayer opts to continue the test of taxability under the prior regulations, the court must determine whether the prior regulations "unequivocally resolve" the issue.

If the court concludes that the prior regulations do not "unequivocally resolve" the issue, it must apply the revised regulations. It is well-settled that the extent to which newly promulgated regulations are to be applied retroactively or nonretroactively is a matter for the discretion of the Secretary or his delegate under section 7805(b) of the Internal Revenue Code. See: *Manhattan Equipment Co. v. Commissioner,* 297 U.S. 129, 135, 56 S.Ct. 397, 400, 80 L.Ed. 1010 (1936); *United States v. California Portland Cement Co., supra.*

---

12. For example, the court stated as one of its findings of fact:

The *primary use* for a flatdeck Maverick trailer without any attachments is for hauling farm or ranch machinery from one place to another. [emphasis added].

G. *Accessories And Attachments.*

The district court held that the stock racks and haying attachments were exempt from the excise tax imposed by § 4061(a)(1) as accessories to vehicles excluded from the provisions of 4061(a)(1). The United States does not appeal the judgment of the court as to the nontaxability of the haying attachment. No finding was made below as to the applicability of the manufacturers' excise tax to the grain box attachment.

The tax imposed by § 4061(a) of the Internal Revenue Code applies to equipment which is sold with the vehicle itself and which contributes toward the highway function of the vehicle. Section 4061(b) levies a tax on parts and accessories sold separately from the vehicle which would otherwise be subject to taxation under § 4061(a). Insofar as the items sold by Dillon Ranch are accessories [13] within the meaning of the statute and regulations, they are taxable to the same extent the trailers are taxable, unless exempt under § 4063(a)(2).

Section 4063(a)(2) specifically excludes from taxation those accessories, otherwise subject to taxation under sections 4061(a) and 4061(b), that are primarily designed for use on farms as feed, seed or fertilizer equipment. The legislative history underlying section 4063(a)(2) indicates that such feed, seed, and fertilizer equipment may satisfy the "primary design" test set forth therein even though it "incidentally may use the highway." S.Rep.No.324, 89th Cong., 1st Sess., pp. 44–45, U.S.Code Cong. & Admin.News 1965, p. 1645 (1965–2 Cum. Bull. 676, 711). Thus, on remand the district court should determine whether the cattle racks and grain boxes are primarily designed to haul feed, seed, or fertilizer to and on farms within the meaning of section 4063(a)(2). The court on remand may take such additional evidence as may be necessary.

REVERSED AND REMANDED.

13. The district court concluded that the trailers were not taxable, however, no question was raised below concerning whether the attachments qualified as accessories within the meaning of section 4061.